OPINION
{¶ 1} Samuel Kelly appeals from his conviction and sentence on one count of rape in violation of R.C. § 2907.02(A)(1)(b).
 {¶ 2} Kelly advances six assignments of error on appeal. First, he contends the trial court erred in overruling his motion to suppress a confession he made while being questioned by police. Second, he claims the trial court erred in failing to declare a mistrial or to conduct a voir dire of the jurors in response to comments made by a prosecutor during a sidebar conference. Third, he asserts that the trial court erred in admitting improper hearsay testimony. Fourth, he argues that prosecutorial misconduct deprived him of his right to a fair trial. Fifth, he contends his sentence was excessive and contrary to law. Sixth, he argues that the cumulative effect of the errors alleged above deprived him of his right to a fair trial.
 {¶ 3} The present appeal stems from an allegation that Kelly had raped his eleven-year-old niece, R.L., in his Fairborn apartment on July 28, 2002. R.L. made the allegation to an older sister, A.J., approximately eleven days after the incident. A.J. then informed Michelle Tanner, an adult family friend who contacted the Fairborn police. On August 8, 2002, R.L. was interviewed at the Children's Medical Center emergency room by social worker Belinda Dewberry and examined by pediatrician Susan Henry. The physical examination revealed a small bruise next to R.L.'s vaginal opening. Dr. Henry opined that the bruise was more than twenty-four hours old at the time of the examination and was consistent with a sexual assault having occurred. Given the passage of time since the incident, Dr. Henry concluded that it would be futile to look for evidence such as semen or hair. Her final diagnosis was a possible sexual assault.
 {¶ 4} On August 21, 2002, Kelly, who was then twenty-four years old, voluntarily appeared at the Fairborn Police Department to be interviewed by detective Matthew Ricketts. During the interview, Kelly repeatedly denied having sex with R.L. but did speak of her as a potential girlfriend at one point. Before the interview concluded, he also offered to undergo a polygraph test.
 {¶ 5} Kelly voluntarily returned to the Fairborn Police Department for the polygraph test on August 28, 2002. Upon his arrival, he met with detective Andy Kindred. After explaining the polygraph process but prior to beginning the examination, Kindred asked Kelly a number of questions. When the questions turned to sexual matters, including whether Kelly ever had engaged in unusual sexual activity or had masturbated, he began removing the polygraph equipment from his body and stated that he no longer wanted to take the test. Kelly remained in the room, however, and continued talking to detective Kindred. After a short time, he confessed to having sexual intercourse with R.L. but claimed that she had been the aggressor. Following the confession, Kelly returned home.
 {¶ 6} On September 6, 2002, the Greene County Prosecutor's office filed a one-count indictment against Kelly, charging him with raping a person under the age of thirteen by force or threat of force. Kelly subsequently moved to suppress his confession, arguing that it was obtained in violation of his Miranda rights and that it was involuntary. Following a hearing, the trial court overruled the motion. The matter proceeded to trial in December, 2003, and a jury found him guilty of rape but determined that he did not compel R.L. to submit by force or threat of force. The trial court later sentenced Kelly to a ten-year prison term and designated him a sexually oriented offender. This timely appeal followed.
 {¶ 7} In his first assignment of error, Kelly contends the trial court erred in overruling his motion to suppress the confession he made while being questioned by detective Kindred. In support, he argues that Kindred coerced him into giving an involuntary confession. He also appears to assert that Kindred failed to obtain a valid waiver of his Miranda
rights.[1]
 {¶ 8} Upon review, we are unpersuaded by either argument. Concerning the Miranda issue, we agree with the trial court's assessment thatMiranda was not implicated because Kelly was not in custody when he confessed. It is well settled that "[p]olice are not required to administer Miranda warnings to everyone whom they question. `Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.' Only custodial interrogation triggers the need for Miranda warnings. The determination whether a custodial interrogation has occurred requires an inquiry into `how a reasonable man in the suspect's position would have understood his situation.' `[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"State v. Biros (1997), 78 Ohio St.3d 426 (citations omitted).
 {¶ 9} In the present case, Kelly voluntarily appeared at the police station to meet with detective Kindred. At the outset of the meeting, Kindred advised Kelly that he was free to leave at any time. Contrary to Kelly's argument on appeal, the videotape does not reflect that Kindred prevented him from leaving the room or in any way restricted his freedom of movement. We note too that Kelly returned home after talking with Kindred. In light of these facts, we agree with the trial court's determination that Kelly was not in custody at the time of his confession. Therefore, there is no need to discuss whether Kelly validly waived his Miranda rights.
 {¶ 10} Assessing the voluntariness of the confession requires a separate inquiry. This is so because whether a confession is voluntary and whether a suspect has been subjected to custodial interrogation so as to require Miranda warnings are analytically separate issues. Dickersonv. United States (2000), 530 U.S. 428; State v. Chase (1978),55 Ohio St.2d 237, 246. The Due Process Clause requires an inquiry, separate from custody considerations, concerning whether a defendant's will was overborne by the circumstances surrounding the giving of his confession. Dickerson, 530 U.S. at 434. This due process test takes into consideration the totality of the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation. Id. Factors to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements. State v.Edwards (1976), 49 Ohio St.2d 31, vacated on other grounds, Edwards v.Ohio (1978), 438 U.S. 911.
 {¶ 11} Even when Miranda warnings are not required, a confession may be involuntary and subject to exclusion if, under the totality of the circumstances, the defendant's will was overborne by the circumstances surrounding the giving of his confession. Dickerson, 530 U.S. at 434. If the attendant circumstances indicate that a confession was coerced or compelled, it cannot be used to convict the defendant. In State v. Otte,74 Ohio St.3d 555, 562, 1996-Ohio-108, the Ohio Supreme Court articulated the prevailing legal standard for determining voluntariness: "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." The voluntariness of a confession is a question of law that an appellate court reviews de novo. Arizona v. Fulminante (1991), 499 U.S. 279,287; State v. Waldo, Champaign App. No. 99CA24, 2001-Ohio-1349.
 {¶ 12} In the present case, we find no merit in Kelly's claim that his free will was overborne by coercive police conduct. The essence of Kelly's argument is that he is mentally retarded and has extremely poor comprehension skills. He asserts that detective Kindred purposefully took advantage of these facts and coerced a confession. Once again, the videotape of Kelly's meeting with Kindred fails to support his claims. Although Kelly appears to have a relatively low level of intelligence, our review of the videotape does not reflect any obvious mental retardation. Kelly informed Kindred that he had twelve years of education and had held several jobs. He also conversed with the detective in an appropriate manner and demonstrated that he was aware of the purpose of the meeting and the nature of the allegations against him. Detective Kindred did not threaten Kelly, deprive him of anything, or prevent him from terminating the interview. We note too that Kelly was twenty-four years old and had some prior experience with law enforcement, as evidenced by his juvenile adjudications for criminal damaging and receiving stolen property. We also note that the interview with detective Kindred was not particularly long and its tone was relaxed. In short, absolutely nothing in the videotape suggests that Kelly lacked the capacity for self-determination or that detective Kindred engaged in coercive police conduct. An examination of the totality of the circumstances persuades us that Kelly's confession was voluntary. Accordingly, we overrule his first assignment of error.
 {¶ 13} In his second assignment of error, Kelly claims the trial court erred in failing to declare a mistrial or to conduct a voir dire of the jurors following comments made by a prosecutor during a sidebar conference. Specifically, he contends the prosecutor opined that he was lying in a voice loud enough for the jury to hear. As a result, Kelly insists that the trial court was obligated to declare a mistrial or question the jurors to ensure that the remarks had not influenced them.
 {¶ 14} We find the foregoing argument to be without merit. Although Kelly asserts that the prosecutor's remarks "could clearly be heard by the jury," the trial court found otherwise. When defense counsel raised the issue, the trial court noted that it had "a system on with sound that goes into the jury box" during sidebar conferences. The trial court then concluded that the remarks were "not loud enough to be heard." In light of these findings, the trial court did not err in denying Kelly's motion for a mistrial or in refusing to voir dire the jury. Accordingly, we overrule Kelly's second assignment of error.
 {¶ 15} In his third assignment of error, Kelly asserts that the trial court erred in admitting improper hearsay testimony. This argument concerns the trial testimony of social worker Belinda Dewberry and pediatrician Susan Henry. Dewberry testified that she questioned R.L. in order to "share the information with the doctor to assist with the medical examination." Dewberry then proceeded to testify about what R.L. said, namely that a relative had inserted his penis into her vagina.[2]
Dewberry testified that she forwarded this information to Dr. Henry. For her part, Dr. Henry testified that the protocol at the Children's Medical Center is for a social worker to conduct an initial interview to assist in a doctor's subsequent medical diagnosis and treatment. In the present case, Dr. Henry explained that she reviewed Dewberry's notes about R.L. being sexually assaulted by her uncle and then proceeded to conduct an examination.
 {¶ 16} On appeal, Kelly argues that the trial court erred in admitting the testimony from Dewberry and Dr. Henry that repeated R.L.'s allegation about being sexually abused. Contrary to the trial court's ruling, Kelly contends the testimony was not admissible under Evid. R. 803(4) because R.L.'s statements were not made for purposes of medical diagnosis or treatment. In support, he stresses that Dewberry did not refer R.L. to another doctor, thereby suggesting that the interview and examination in the Children's Medical Center emergency room were conducted for investigatory or law-enforcement purposes. Kelly fails to mention, however, that Dewberry did not refer R.L. to another doctor for follow-up care after the examination by Dr. Henry only because R.L.'s mother expressed a preference to "follow up with her primary care physician."
 {¶ 17} Having reviewed the record, we find no error in the trial court's admission of testimony from Dewberry and Dr. Henry about R.L. being sexually abused. Evid. R. 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Dewberry explained that she interviewed R.L. in order to obtain information to assist Dr. Henry in her medical diagnosis and treatment. In addition, R.L.'s remarks about a relative placing his penis in her vagina described "the cause or external source" of the pain that she had experienced since the incident. Therefore, the trial court did not abuse its discretion in finding the testimony of Dewberry and Dr. Henry admissible under Evid. R. 803(4).[3] Accordingly, we overrule Kelly's third assignment of error.
 {¶ 18} In his fourth assignment of error, Kelly argues that prosecutorial misconduct during closing arguments deprived him of his right to a fair trial. In order to prevail on this claim, he must demonstrate that the prosecutor's remarks were improper and that they prejudicially affected his substantial rights. State v. Buelow, Clark App. No. 2004 CA 18, 2004-Ohio-6052, at ¶ 11, citing State v. Bey,85 Ohio St.3d 487, 494, 1999-Ohio-283.
 {¶ 19} Kelly's first argument is that the prosecutor referred to facts not in evidence. This argument concerns the prosecutor's effort to explain why investigators didn't attempt to collect semen that R.L. said had fallen on the floor during the sexual assault approximately eleven days earlier. During trial, defense counsel had stressed the State's failure to search for the semen. In closing argument, the following exchange occurred:
 {¶ 20} THE PROSECUTOR: "You're going to hear about why didn't they go to the apartment and try to collect this semen that would be on the floor. Okay. Let's say we did. The Defendant already told Detective Kindred that he masturbates. Who is to say he wasn't sitting in his living room watching a porno masturbating and that's how the semen got to the floor."
 {¶ 21} DEFENSE COUNSEL: "Objection, Your Honor."
 {¶ 22} THE PROSECUTOR: "It's a fair inference."
 {¶ 23} THE COURT "Well, let's indicate that we're going to address the evidence presented in this case."
 {¶ 24} THE PROSECUTOR: "Sure. There would be any number of reasons why the Defendant's semen is on the floor in his own apartment that he could come up with. He could come up with any kind of a story. Well, we saw that. He can come up with any kind of a story."
 {¶ 25} Although the evidence does reflect that Kelly sometimes masturbated, it does not contain any evidence that he did so while watching pornographic movies. In our view, the prosecutor's speculative reference to pornographic movies was improper. We note, however, that the trial court implicitly sustained the objection by cautioning the prosecutor to stick to "the evidence presented in this case." The trial court also later instructed the jury that closing arguments were not evidence. In light of these facts, we do not find that the isolated reference to pornographic movies prejudiced Kelly's substantial rights.
 {¶ 26} Kelly next contends the prosecutor misstated the evidence by claiming there was only one way the small bruise next to R.L.'s vaginal opening could have occurred. As Kelly notes on appeal, Dr. Henry actually testified that the bruise could have resulted from a sexual assault, bike riding, or a fall. In his own closing argument, defense counsel pointed out the prosecutor's misstatement, telling the jury: "Contrary to what Mr. Hendrix stated, the doctor testified that this bruising to the vaginal area of [R.L.] could be caused by a number of factors, including riding a bike." Given this direct response by defense counsel, and the trial court's admonition that closing arguments were not evidence, we are convinced that the prosecutor's misstatement did not deprive Kelly of a fair trial.
 {¶ 27} Finally, Kelly claims the prosecutor inappropriately appealed to emotion rather than sound reasoning. Instead of discussing examples of such misconduct, Kelly merely cites assorted pages of the trial transcript. Having reviewed those pages, we find no impermissible appeal to emotion. In fact, on most of the pages cited by Kelly, the prosecutor expressly urged the jury to decide the case based on the evidence presented in court. Accordingly, we find no prosecutorial misconduct and we overrule the fourth assignment of error.
 {¶ 28} In his fifth assignment of error, Kelly contends his sentence was excessive and contrary to law. Kelly's full argument in support is as follows:
 {¶ 29} "In this case, Appellant had led a law-abiding life for a significant number of years. He was mentally retarded. He has never been charged with a crime such as this one. The jury found the Appellant guilty of rape, but not rape by force. The record does not indicate that Appellant is a likely candidate for recidivism. He was not found to be a sexual predator. He submits that a 10-year sentence is overly harsh in consideration of his circumstances."
 {¶ 30} Given that Kelly received the statutory maximum sentence for his rape conviction, R.C. § 2953.08(A)(1)(a) authorizes him to appeal the sentence as a matter of right. Upon review, however, we have no authority to determine whether a trial court abused its discretion in selecting the sentence that it did. R.C. § 2953.08(G)(2). Rather, when hearing an appeal under R.C. § 2953.08(A)(1)(a), our review is limited to determining whether a trial court made certain findings not relevant here or whether an appellant's sentence is "contrary to law." Id. The phrase "`contrary to law' means that a sentencing decision manifestly ignores an issue or factor which a statute requires a court to consider." State v. Lofton,
Montgomery App. No. 19852, 2004-Ohio-169. When a trial court fails to make findings and give reasons necessary for the imposition of a maximum sentence, the sentence is contrary to law. State v. Shepherd, Montgomery App. No. 19284, 2002-Ohio-6790, at ¶ 24.
 {¶ 31} With regard to Kelly's assertion that his sentence is excessive or too harsh, we have held that this is tantamount to an abuse-of-discretion claim, which is not cognizable on appeal. State v.Cochran, Montgomery App. No. 20049, 2004-Ohio-4121, at ¶ 11. Indeed, as we recognized in Lofton, supra, at ¶ 9-13, an appellate court lacks jurisdiction to consider a claim that a defendant's sentence is excessive because certain facts militate against it.
 {¶ 32} Although Kelly's sentence is subject to review for purposes of determining whether the trial court made the necessary findings and gave reasons to support it (i.e., whether it is contrary to law), he does not challenge his sentence on this basis. Kelly points to no failure by the trial court to comply with any specific statutory procedure that it was required to follow. We are not disposed to review the statutory requirements implicated by Kelly's sentence absent some specific contention in his appellate brief. Lofton, supra, at ¶ 14. Accordingly, we overrule his fifth assignment of error.
 {¶ 33} In his sixth assignment of error, Kelly argues that even if the errors he has alleged herein were harmless individually, their cumulative effect resulted in an unfair trial. It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal, 87 Ohio St.3d 378, 397,2000-Ohio-448. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. Id. at 398. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. State v. Thomas, Clark App. No. 2000-CA-43, 2001-Ohio-1353. In our review of Kelly's other arguments, however, we found no multiple errors. Given that no multiple errors exist, we overrule his sixth assignment of error.
 {¶ 34} Having overruled each of Kelly's assignments of error, we hereby affirm the judgment of the Greene County Court of Common Pleas.
Judgment affirmed.
Grady, J., and Young, J., concur.
[1] Although Kelly advanced this argument in the trial court, his appellate brief fails to make clear whether he is pursuing it on appeal. In the interest of completeness, however, we will address the Miranda
issue.
[2] Although the trial court permitted this testimony, it did not allow Dewberry to identify the relative by name.
[3] In State v. Dever (1992), 64 Ohio St.3d 401, 1992-Ohio-41, the Ohio Supreme Court adopted a somewhat relaxed "motivational requirement" in cases involving statements made by children to examining physicians. Although the hearsay exception provided by Evid. R. 803(4) rests on the belief that a declarant's subjective motive to obtain proper diagnosis and treatment generally guarantees the statement's trustworthiness, theDever court noted that young children often are not personally motivated to seek treatment. Nevertheless, the Dever court reasoned that "[o]nce the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment normally will be present. That is to say, the initial desire to seek treatment may be absent, but the motivation certainly can arise once the child has been taken to the doctor. Absent extraordinary circumstances, the child has no more motivation to lie than an adult would in similar circumstances." Id. at 409-410. Unless the circumstances surrounding the making of the child's statement indicate that it was inappropriately influenced by others, the child's statement should be admitted under Evid. R. 803(4). Id. at 410. In the present case, we find no evidence that R.L.'s statements were influenced by others and Kelly makes no such argument.