OPINION
{¶ 1} Defendant-appellant, James E. Walker, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a no contest plea, of one count of gross sexual imposition in violation of R.C. 2907.05, a felony of the third degree. Because the trial court properly determined defendant to be a sexual predator and properly denied defendant's motion to suppress, we affirm.
 {¶ 2} Pursuant to indictment filed in case No. 03CR-3745 on June 4, 2003, defendant was charged with one count of gross sexual imposition. According to the indictment, the victim was defendant's niece, D.L., who was six to seven years of age at the time of the offense.
 {¶ 3} On September 23, 2003, the court ordered a competency examination for defendant. According to an October 20, 2003 letter from Netcare, filed in the court on October 28, 2003, defendant, though mentally retarded, had no mental illness. The letter, authored by Pamela Chapman, Ph.D., Clinical Psychologist, and Chris Khellaf, Ph.D., DABPS, Clinical Supervisor of Forensic Services, indicated defendant was capable of understanding the nature and objective of the proceedings against him and of assisting his counsel in his defense.
 {¶ 4} Case No. 03CR-3745 was consolidated for trial with case No. 03CR-2458 and scheduled for a September 7, 2004 trial. In case No. 03CR-2458, defendant was charged with two counts of gross sexual imposition involving two young girls, ages four and seven. On the day of trial, the court conducted an evidentiary hearing on defendant's December 29, 2003 motion to suppress that asserted his interview with the police violated his right to counsel and, alternatively, his confession was involuntary. The trial court denied the motion.
 {¶ 5} After the motion was denied, the prosecution and defense entered into negotiations resulting in defendant's entering a guilty plea in case No. 03CR-2458 to two counts of child endangering, misdemeanors of the first degree. In addition, defendant entered a no contest plea to the single count of gross sexual imposition alleged in case No. 03CR-3745.
 {¶ 6} On October 28, 2004, the trial court conducted a sexual predator hearing. Following it, the trial court determined defendant to be a sexual predator and sentenced defendant to five years of community control. Defendant appeals, assigning the following errors:
I. The trial court's decision finding the appellant to be a sexual predator as defined by O.R.C. 2950.01(E) is contrary to the weight of the evidence.
II. The trial court erred in denying the appellant's motion to suppress.
 {¶ 7} Defendant's first assignment of error asserts the trial court erred in finding him to be a sexual predator. Relying heavily on the testimony of his expert witness, Charles Gerlach, Ph.D., who opined that defendant is not likely to re-offend, defendant contends the trial court's determination is not supported by the requisite clear and convincing evidence.
 {¶ 8} Sexual predator determinations have been held to be civil in nature. See State v. Newton (June 11, 1998), Franklin App. No. 97APA10-1353. The standard for assessing the manifest weight of the evidence in a civil case is whether the judgment is "supported by competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280-281. When presented with a manifest weight argument in a criminal case, we engage in a limited weighing of the evidence to determine whether the judgment is supported by sufficient competent, credible evidence to permit reasonable minds to so conclude. State v. Thompkins
(1997), 78 Ohio St.3d 380, 388; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. Under either the civil or the criminal analysis, determinations of credibility and weight of the evidence remain within the province of the trier of fact. See, e.g., State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Whether we apply the civil or criminal test for assessing the manifest weight of the evidence, the result here is the same.
 {¶ 9} In order for defendant to be designated a sexual predator, the state was required to prove by clear and convincing evidence not only that defendant was convicted of, or pleaded guilty to, committing a sexually oriented offense, but also that defendant is likely to engage in the future in one or more sexually oriented offenses. Former R.C. 2950.01(E)(1) and former R.C. 2950.09(B)(3); State v. Eppinger (2001),91 Ohio St.3d 158, 161. Defendant does not dispute that a sexually oriented offense is involved in this case. Rather, defendant contends the state failed to present clear and convincing evidence that defendant is likely to commit other sexually oriented offenses, and the evidence therefore is insufficient to establish that defendant is a sexual predator. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." Eppinger, at 164, quoting Cross v. Ledford (1954),161 Ohio St. 469, 477.
 {¶ 10} The purpose of R.C. Chapter 2950 is to protect the safety and general welfare of the people of this state. Former R.C. 2950.02(B); Eppinger, at 165. Former R.C. 2950.09(B)(2) requires that the trial court consider all relevant factors in making a sexual predator determination, including those enumerated in the statute. Eppinger, at 166; State v. Maser
(Apr. 20, 1999), Franklin App. No. 98AP-689. No requisite number of factors must be applicable before a defendant is found to be a sexual predator, and the trial court may place as much or as little weight on any of the factors as it deems to be appropriate. State v. Austin (Nov. 2, 2000), Franklin App. No. 00AP-184; Maser, supra. Even one or two statutory factors will suffice as long as the evidence of likely recidivism is clear and convincing. State v. Hardie (2001), 141 Ohio App.3d 1, 5.
 {¶ 11} Defendant accepted the facts presented in connection with his plea in case No. 03CR-2458, which disclosed that on March 26, 2003, detectives in the Juvenile Bureau received a report of sexual abuse involving B.M., who was age four at the time, and B.J., age seven. The information disclosed that defendant occasionally babysat for the children and on one occasion sexually abused them. When the detectives interviewed the older child, she stated that defendant "tried to lick her private. She resisted. The defendant did end up placing his hand inside her pants between her pants and her underwear and fondled her vaginal area." (Tr. 64.) Interview of the younger victim indicated defendant "licked my cooter, her word for vagina, and also fondled her." Id.
 {¶ 12} Defendant was arrested in case No. 03CR-3745 on April 3, 2003, as a result of the allegations arising in case No. 03CR-2458. When she learned of the information from case No. 03CR-2458, defendant's sister contacted Columbus police and informed them of unrelated allegations involving her daughter, D.L. An interview of D.L. revealed that sometime between January 12, 1999 and January 11, 2001, when D.L. was between six and seven years of age, defendant was babysitting in her mother's absence. She was playing video games, and she and defendant were upstairs alone in her bedroom. "He touched her vaginal area with his hand on top of her clothing. She described the touching as rubbing motion which unexpectedly stopped when a car door shut outside the home." (Tr. 63.) According to D.L., she immediately told her parents about the incident, but defendant denied the allegations. Defendant was forced to move out of the home.
 {¶ 13} In addition to those facts, the trial court had, for consideration, the testimony of Dr. Gerlach who opined that, as a result of inkblot testing, determined defendant had no sexual preoccupation, had no mental condition, excluding mental retardation, and was not a pedophile. Explaining, Dr. Gerlach stated that "there's not a consistent history of sexual preoccupation and pursuit of people as sexual objects, number one. Number two, there is not the preoccupation of sexual imagery and aggression revealed either by him or in the psychological testing." (Tr. 97.)
 {¶ 14} Dr. Gerlach ultimately testified that, in his professional opinion and to a reasonable degree of psychological certainty and probability, defendant was not likely to engage in one or more sexually oriented offenses in the future. Again, explaining his answer, Dr. Gerlach stated defendant does not fit "the profile of a predator. And, secondly, he does have an understanding of what's right and wrong. And what I experienced with him is that there is operating sense of conscience within himself about what [he] did to his niece that he feels very badly about. And he certainly has cognitive understanding of that." (Tr. 98.)
 {¶ 15} Because the state did not present any psychological testimony regarding defendant's likelihood to re-offend, defendant contends the evidence is not clear and convincing that he is likely to re-offend. The trial court, however, was not required to accept Dr. Gerlach's opinion, provided the record presents a basis for finding it less than persuasive. Here, the record provides a number of bases for the trial court to reject Dr. Gerlach's opinion.
 {¶ 16} Specifically, Dr. Gerlach testified he tested defendant only with the Rorschach/Exner Comprehensive System inkblot test, to the exclusion of other tests commonly used to address sexual abuse issues. He further admitted that the inkblot test he administered is "not geared to yield diagnoses" of sexual deviance. (Tr. 104.) In addition, Dr. Gerlach acknowledged that most of his work involves children; that he "also evaluate[s] adults [on an] as needed basis. It's not my primary function." (Tr. 101.) When asked what percentage of his patients dealt with sexual deviancy, he replied, "small, small percentage." Id. Further, when asked about his training to address sexual deviancy issues, he stated "I have been to workshops on that, but I've not had any sort of training." (Tr. 102.)
 {¶ 17} In addition, his opinion was premised on defendant's version of the facts, as Dr. Gerlach stated he arrived at no "clear conclusion that [defendant] did sexually touch those other two girls. And I explored this with him from different angles at different times. And I explored how the police got their report, et cetera. And I'm not saying he did or didn't. I'm just saying I did not get any clear evidence that he actually touched them sexually." (Tr. 106-107.) Dr. Gerlach, observing that defendant's grandfather had sexually abused defendant, admitted that those who have been the subject of sexual abuse are at a higher risk to be a sexual offender. He also acknowledged his awareness that sexual offenders who commit sexual crimes against children have the highest rate of recidivism.
 {¶ 18} Thus, to the extent defendant contends the sexual predator determination must be reversed on the basis of Dr. Gerlach's testimony, his contentions lack merit. Moreover, the trial court did not base its determination simply on the deficiencies it found in Dr. Gerlach's testimony, but specifically articulated on the record the factors in former R.C.2950.09(B)(2) it considered in determining defendant to be a sexual predator.
 {¶ 19} Initially, the trial court noted defendant's age, former R.C. 2950.09(B)(2)(a), and expressed its concern about the risk of re-offending for someone in his 20's, as defendant was at the time of the offense. In addition, the court referenced the young age of the victim of the crime in case No. 03CR-3745. Former R.C. 2950.09(B)(2)(c). At the same time, the trial court pointed to case No. 03CR-2458 and the two young girls who were victims of defendant's criminal offenses in that case.
 {¶ 20} The trial court further noted that one victim is a relative, and the others were neighbors, giving rise to positions of trust that were violated. Former R.C. 2950.09(B)(2)(j). Drawing on the testimony of Dr. Gerlach, the court observed that defendant himself was a victim and, according to Dr. Gerlach's testimony, that status creates an increased risk in defendant of re-offending. The court also pointed out its concern arising from defendant's denial in his sessions with Dr. Gerlach that he touched the two girls in case No. 03CR-2458. The trial court also noted defendant's mental disability in the form of mental retardation, observing the increased difficulty in counseling, a factor the trial court considered more heavily in the sentencing aspects of the proceedings.
 {¶ 21} Defendant contends on appeal, as he did in the trial court, that the trial court erred in considering the facts of case No. 03CR-2458, when the sexual predator determination arose out of his gross sexual imposition conviction related to D.L in case No. 03CR-3745. The trial court acknowledged that former R.C.2950.09(B)(2)(d) inquires whether the offense involved multiple victims, and the offense in case No. 03CR-3745 did not. Nonetheless, the trial court was not required to ignore the facts of the companion case involving two young girls with accusations similar to those in case No. 03CR-3745. As the trial court noted, it, at the very least, could properly consider those factors under the language of former R.C. 2950.09(B)(2) which provides that the judge "shall consider all relevant factors," including, but not limited to those listed in that section. Accordingly, the trial court properly considered defendant's action with respect to the two young girls in case No. 03CR-2458, including his denial of any culpability in that matter.
 {¶ 22} Without question, some of the factors in former R.C.2950.09(B)(2) are irrelevant to the trial court's determination. Nonetheless, given defendant's inappropriate touching of three young girls, his denial of culpability with respect to two, his status as an abused child, the higher recidivism rate for those who abuse younger children, and his own age, we cannot say the trial court erred in finding by clear and convincing evidence that defendant is a sexual predator. Defendant's first assignment of error is overruled.
 {¶ 23} Defendant's second assignment of error asserts the trial court erred in denying his motion to suppress. Preliminarily, we note defendant's contentions do not arise out of a custodial interrogation. To the contrary, defendant was at his home when two police officers approached and requested to speak with him. He was not under arrest, was not threatened with arrest, and was free to decline to speak with the officers. Accordingly, Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, is not implicated.
 {¶ 24} Instead, defendant's contentions raise a separate inquiry concerning the voluntariness of his confession, an issue analytically separate from those issues surrounding custodial interrogations and Miranda warnings. State v. Kelly, Greene App. No. 2004-CA-20, 2005-Ohio-305. "The Due Process Clause requires an inquiry, separate from custody considerations, concerning whether a defendant's will was overborne by the circumstances surrounding the giving of his confession." Id. at ¶ 10, citing Dickerson v. United States (2000), 530 U.S. 428,434, 120 S.Ct. 2326. "This due process test takes into consideration the totality of the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation. * * * Factors to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements."Kelly, at ¶ 10, citing State v. Edwards (1976),49 Ohio St.2d 31, vacated on other grounds, Edwards v. Ohio (1978),438 U.S. 911. "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." Kelly,
at ¶ 11, quoting State v. Otte (1996), 74 Ohio St.3d 555, 562.
 {¶ 25} According to the evidence produced in the hearing before the trial court, Detectives Brian Sheline and David Phillips went to the home of defendant's mother, where defendant also resided. After speaking with his mother and receiving her agreement to allow the officers to talk to her son, the two officers approached defendant, who was willing to speak with them.
 {¶ 26} Although defendant initially denied the allegations regarding D.L., the officers continued to speak with him. At one point, one of the officers indicated they would take a saliva sample from his mouth and compare it with test results from a rape kit obtained following the incident that was the subject of their inquiry. The officer advised defendant that if he touched D.L.'s vagina, his bacteria would be on her, would have been recovered at the time of the incident, and would be available to be compared to the DNA obtained from his saliva sample. When the officer asked defendant if his bacteria would show up in those tests, defendant said it would not.
 {¶ 27} The officers continued to speak with defendant, advising defendant to tell the truth and suggesting that they could help him more readily if he admitted to wrongdoing early in the investigation. When the officers asked defendant if his niece was lying when she stated he touched her inappropriately, defendant admitted that she was not lying.
 {¶ 28} The trial court denied defendant's motion to suppress, noting that although the questioning from the detectives, especially Detective Phillips, perhaps was aggressive, it was not coercive. In particular, the trial court observed that it was not too long, lasting about 30 minutes, and no threats or promises were made. Indeed, defendant was at his home, free to leave at any time, and not deprived of anything necessary to satisfy his physical needs.
 {¶ 29} In addition, the trial court noted the Netcare evaluation of October 20, 2003, which indicates defendant is capable of understanding the nature of the proceedings against him and of assisting counsel. While the court acknowledged that the report was not conclusive as to defendant's diminished capacity insofar as it related to the voluntariness of his confession, the court stated it was "especially impressed" (Tr. 54) by the last two paragraphs which indicate that defendant graduated from high school, drives a car, can learn new information, and responds to questions appropriately. The report estimated defendant's diminished mental capacity to be in the mild range of retardation, but that defendant had a fair grasp of both specific legal circumstances and general details of legal procedures, a fair understanding of the available plea options and their implications, and the meaning of plea bargaining and the adversarial nature of the legal process, including the identities and roles of the significant courtroom staff.
 {¶ 30} In asserting the trial court erred in denying his motion, defendant focuses on two aspects of the evidence. Initially, defendant contends his mental retardation is a factor indicating his will was overridden by the aggressiveness of the officers' questioning. The evidence, however, supports the trial court's conclusion that defendant's mental retardation is not dispositive of the issue of voluntariness in this case. Cf.Kelly, supra. As the trial court noted, Netcare concluded defendant had a grasp of the legal proceedings against him. Indeed, when defendant was arrested in connection with case No. 03CR-2458, defendant was advised of his Miranda rights, he refused to speak with the officers, and requested counsel. Because defendant so acted in prior encounters with the police at the police station, we find it difficult to conclude that defendant's will was overridden here, where he was at home with his mother, was not under arrest, and was free to leave according to his own will. Having demonstrated, in considerable more stressful circumstances, an ability to assert his rights, defendant has failed to show that in more relaxed circumstances the questioning of the police overrode his will.
 {¶ 31} Defendant, however, contends that the police detective deceived him in attempting to convince him that DNA tests could identify him as the perpetrator of the offense. Deception is a factor that bears on the voluntariness of a defendant's confession. State v. Wiles (1991), 59 Ohio St.3d 71, 81. Nonetheless, deception, "standing alone, is not dispositive of the issue." State v. Brown (Jan. 30, 2001), Mahoning App. No. 96 C.A. 56, citing Wiles, supra. Rather, the issue remains whether the "confession arises from defendant's will being overborne." Brown, citing Schneckloth v. Bustamonte (1973),412 U.S. 226, 93 S.Ct. 2041.
 {¶ 32} Here, the detective's questioning was deceitful. No evidence had been gathered at the time of the incident and preserved for future use. The scientific basis of the detective's contention that bacteria could be preserved and matched to defendant's DNA obtained from a saliva sample is questionable, at best. Nonetheless, defendant had sufficient understanding of the question to answer truthfully the detectives' question. Detective Phillips asked, "So, are you pretty confident that when we do a test it's going to show your bacteria's not there?" (Tape Tr. 38.) Defendant responded, "As far as I know, yeah." Id. Unsatisfied with defendant's equivocal answer, the detective stated, "So if you did not touch her vagina, you should be able to tell me, `My bacteria is not going to be there.'" (Tape Tr. 39.) Defendant responded, "My bacteria is not going to be there." Id. Indeed, defendant never touched her vagina, but confessed only to touching the outside of her clothing. Accordingly, the detective's attempt at deceit was unsuccessful. Only when the detectives approached the defendant with admonitions to tell the truth and to put himself in a position for the police to help him did defendant ultimately confess. See State v. Bays (Jan. 30, 1998), Greene App. No. 95-CA-118 (noting that "an officer's mere suggestion or statement that it would be better than not if the accused told the truth, is not improper").
 {¶ 33} Under the totality of the circumstances, including those factors the trial court cited, we cannot conclude that defendant's will was overridden by the nature of the interrogation. Defendant's second assignment of error is overruled.
 {¶ 34} Having overruled both of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Brown, P.J., and French, J., concur.