[Cite as *State v. Boone*, 2018-Ohio-2541.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27668 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-2095/1 |
| | : | |
| DONALD T. BOONE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of June, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DANIEL J. O'BRIEN, Atty. Reg. No. 0031461, 1210 Talbott Tower, 131 North Ludlow Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Donald T. Boone appeals his conviction and sentence for one count of possession of cocaine (20 grams but less than 27 grams), in violation of R.C. 2925.11(A), a felony of the second degree; one count of having weapons while under disability (prior offense of violence), in violation of R.C. 2923.13(A)(2), a felony of the third degree; and one count of trafficking in cocaine (20 grams but less than 27 grams), in violation of R.C. 2925.03(A)(1), a felony of the second degree. Boone filed a timely notice of appeal with this Court on July 26, 2017.

{¶ 2} The record establishes that in January 2016, the Regional Agency Narcotics Gun Enforcement Task Force ("R.A.N.G.E") began a drug investigation regarding a residence located at 248 Kenwood Avenue in Dayton, Ohio. The R.A.N.G.E. Task Force is a conglomerate of different police jurisdictions throughout Montgomery County that work together to serve warrants for illegal drugs and guns. Heading up the investigation for the R.A.N.G.E. Task Force was Dayton Police Detective Ryan Halburnt, who testified that he had eighteen years of law enforcement experience. After surveilling the subject residence and conducting three controlled drug buys, Detective Halburnt completed an affidavit for a search warrant for 248 Kenwood Avenue.

{¶ 3} In his affidavit, Detective Halburnt stated that he had probable cause to believe that evidence of illegal drug possession and trafficking was concealed inside the residence located at 248 Kenwood Avenue. In support of his affidavit, Detective Halburnt stated that in January 2016, he received information from a reliable confidential informant ("CI") that an individual was selling crack cocaine from the subject residence. Detective Halburnt indicated that the CI had provided him with information in the past

which led to the issuance of search warrants and the eventual recovery of weapons, drugs, and money. The CI further informed Detective Halburnt that a black male nicknamed "T," later identified as Boone, was selling crack cocaine from the residence and that "T's" phone number was 732-0381. The CI also stated that other unidentified males sold drugs from the residence when "T" was not present there.

{¶ 4} Upon searching the Montgomery County tax records, Detective Halburnt discovered that Boone was the owner of the residence located at 248 Kenwood Avenue. Detective Halburnt testified that he then searched the Dayton Police Management Information System as it pertained to the subject residence and discovered that on November 19, 2013, police officers had been dispatched to that address on a drug complaint. The officer's comments from the field interview card indicate that Boone was present at the residence on that date, and a small amount of marijuana was recovered from his person for which he received a minor misdemeanor citation. Boone also provided his phone number to the officers which was 732-0381.

{¶ 5} Detective Halburnt also searched Boone's criminal history in the Management Information System and found that in September 2009, Boone had been trespassed from a known drug house where heroin was found. Boone also pled guilty to trafficking in cocaine in a 2006 Greene County case. Detective Halburnt obtained a photograph of Boone from the system and showed it to the CI. The CI identified the man in the photograph as "T," who was selling cocaine from the subject residence.

{¶ 6} Detective Halburnt and Detective Andrew McCoy used the CI to arrange controlled drug buys from Boone at 248 Kenwood Avenue on three separate dates, to wit: February 17, 2016, March 2, 2016, and March 22, 2016. Prior to each of the

controlled buys, the CI was searched in order to ensure that he was not in possession of any money and/or drugs. Additionally, prior to each buy, the CI contacted Boone on his cell phone at 732-0381, spoke with Boone, and was directed to come to the subject residence. The detectives then provided the CI with a sum of money and observed as he entered the residence at 248 Kenwood Avenue. Shortly thereafter, the CI would exit the residence and present the detectives with the crack cocaine that he had purchased.

{¶ 7} With respect to the first two buys on February 17, 2016 and March 2, 2016, the CI reported that he purchased drugs from an unknown black male, whom he described as light-skinned, approximately six feet tall and weighing 260 pounds, with brown hair and brown eyes. The last controlled buy of March 22, 2016, involved a purchase by the CI of drugs directly from Boone. Detective Halburnt stated that the drugs recovered from the CI after each of the controlled buys was tested, analyzed, and found to be crack cocaine.

{¶ 8} Based upon the information contained in Detective Halburnt's affidavit, a Dayton Municipal Court judge approved a search warrant on March 24, 2016, for the residence located at 248 Kenwood Avenue and its surrounding curtilage. The search warrant also encompassed Boone and the unknown male suspect. At approximately 10:00 a.m. on March 25, 2016, Detective Halburnt and other members of the R.A.N.G.E. Task Force conducted a search of the subject residence pursuant to the search warrant. After forcing entry into the house when no one answered the door, the officers located four individuals inside the house, but Boone was not present. While searching outside the perimeter of the house, Detective Halburnt observed a man fitting Boone's description run out of a detached garage into an alley. Detective Halburnt testified that he was able

to detain the individual, later identified as Boone, after a brief chase down the alley.

{¶ 9} The State also presented the testimony of Deputy Samuel Hemingway of the Five Rivers Metropark Police Department. On March 25, 2016, Deputy Hemingway was working with the R.A.N.G.E. Task Force and was tasked with interviewing the suspects who had been detained at the subject residence. Deputy Hemingway conducted the interview of Boone after he was taken into custody. Boone had already been handcuffed when Deputy Hemingway began the interview. We note that the interview took place inside the back area of a law enforcement "rapid deployment" vehicle. Deputy Hemingway was wearing a recording device which he used to create an audio recording of Boone's interview. Deputy Hemingway testified that he informed Boone that the interview was being recorded. The recording of Boone's interview was introduced at the motion to suppress hearing as State's Exhibit #2.

{¶ 10} Deputy Hemingway testified that he introduced himself to Boone and explained why the police were at his residence. Deputy Hemingway then verbally advised Boone off his *Miranda* rights. Deputy Hemingway did not utilize a pre-interview waiver form, but he testified that he was confident in his ability to verbally advise Boone of his *Miranda* rights because he had done so in hundreds of other cases as a law enforcement officer. After being advised of his constitutional rights, Boone informed Deputy Hemingway that he understood his rights. Deputy Hemingway then asked Boone if he was willing have a conversation, and Boone responded affirmatively.

{¶ 11} Deputy Hemingway interviewed Boone for approximately fifteen minutes. Boone did not appear to be under the influence of alcohol or drugs during the interview. Deputy Hemingway testified that Boone was lucid and answered questions appropriately.

At one point during the interview, Deputy Hemingway informed Boone that if he answered questions honestly, Deputy Hemingway would advocate to the trial court and the prosecutor to "cut [Boone] a break." During the interview, Boone made admissions with respect to the offenses for which he was charged.

{¶ 12} Thereafter on August 15, 2016, Boone was indicted for one count of possession of cocaine (20 grams but less than 27 grams); one count of having weapons while under disability (prior offense of violence); and one count of trafficking in cocaine (20 grams but less than 27 grams). At his arraignment on September 1, 2016, Boone pled not guilty.

{¶ 13} On September 19, 2016, Boone filed a motion to suppress all of the physical evidence seized during the search by police as a result of the search warrant executed on March 25, 2016. Boone also sought suppression of any statements he made to police after being taken into custody. A hearing was held on said motion on January 27, 2017. On March 16, 2017, the trial court issued a decision overruling Boone's motion to suppress in its entirety.

{¶ 14} On May 22, 2017, Boone entered pleas of no contest to all three counts in the indictment. On June 26, 2017, the trial court sentenced Boone to an aggregate prison term of three years. Immediately after being sentenced, Boone filed a motion to stay his sentence pending the outcome of his appeal, which the trial court granted.

{¶ 15} Boone's appeal is now properly before this Court.

{¶ 16} Boone's first assignment of error is as follows:

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR WHEN IT FOUND THERE WAS A SUBSTANTIAL BASIS FOR

THE MAGISTRATE JUDGE CONCLUDING THERE WAS PROBABLE CAUSE TO SEARCH THE DEFENDANT'S HOME.

{¶ 17} In his first assignment, Boone contends that the trial court erred when it overruled his motion to suppress with respect to the search warrant issued on March 24, 2016. Specifically, Boone argues that the trial court did not have a substantial basis for concluding that probable cause existed to issue the search warrant.

{¶ 18} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010–Ohio–116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford*, 93 Ohio App.3d at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 19} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and/or things to be seized. *See also State v. Jones*, 143 Ohio St.3d 266, 2015–Ohio–483, 37 N.E.3d 123, ¶ 11.

{¶ 20} We begin our analysis with the governing legal standards. Under Crim.R. 41, a request for a search warrant requires a sworn affidavit "establishing the grounds for issuing the warrant." Crim.R. 41(C)(1). The judge may issue a search warrant if the

judge finds, based on the information in the affidavit, that "probable cause for the search exists." Crim.R. 41(C)(2). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Id.* "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**{¶ 21}** Trial courts and appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus; *Jones* at ¶ 14.

**{¶ 22}** Regarding informants, as this Court has previously noted:

"Courts have generally recognized three categories of informants: (1) the identified citizen informant, (2) the known informant, i.e., someone from the criminal world who has a history of providing reliable tips, and (3) the anonymous informant." *State v. Jordan*, 104 Ohio St.3d 21, 2004–Ohio–6085, 817 N.E.2d 864, ¶ 36, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999).

"Where a confidential or anonymous informant is the source of the hearsay, the 'informant's veracity, reliability and basis of knowledge are all highly relevant' in a totality of the circumstances probable cause determination. *Gates* at 230 (internal quotations omitted). There must be some basis in the affidavit to indicate the informant's credibility, honesty or reliability. An affidavit which contains detailed information from informants (permitting an inference that illegal activity was personally observed by the informants), police corroboration of an informant's intelligence through its own independent investigation, or additional testimony by the affiant helps to bolster and substantiate the facts contained within the affidavit. While individual facts and statements themselves may not separately support a probable cause determination, a reviewing court must weigh all of the components together because '[p]robable cause is the sum total of [all] layers of information.' " (Citations omitted.) *State v. Harry*, 12th Dist. Butler No. CA2008–01–0013, 2008–Ohio–6380, ¶ 20.

*State v. Mitchell*, 2d Dist. Montgomery No. 25402, 2013–Ohio–622, ¶ 19–20.

{¶ 23} As we have further noted, while an informant's veracity, reliability and basis of knowledge are highly relevant factors to the determination of probable cause, "those factors are not separate and independent requirements but, rather, 'intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.' " *State v. Harris*, 2d Dist. Montgomery No. 18913, 2002 WL 1041868, *1 (May 24, 2002), quoting *Gates* at 320. "Accordingly, an informant's tip may be reliable despite the

deficiency in one factor where there is a strong showing of another factor or some other indicia of reliability." *Id.*, citing *Gates* at 233.

**{¶ 24}** Finally, we note that the "Supreme Court of the United States held that evidence obtained in violation of the Fourth Amendment by an officer acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded from state criminal prosecution. (Citations omitted)." *State v. Arnold*, 2d Dist. Clark No. 2016 CA 20, 2017–Ohio–559, ¶ 48.

**{¶ 25}** Upon review, we conclude that the municipal court judge who approved the search warrant "had a substantial basis for finding a fair probability" that the drugs and firearms identified in the warrant would be found in Boone's residence located at 248 Kenwood Avenue. *See State v. Smith*, 2d Dist. Greene No. 2009–CA–81, 2010–Ohio–6229. As previously stated, in January 2016, Detective Halburnt received information from a reliable CI that an individual was selling crack cocaine from the subject residence. Detective Halburnt indicated that the CI had provided him with information in the past which led to the issuance of search warrants and the eventual recovery of weapons, drugs, and money. The CI further informed Detective Halburnt that a black male nicknamed "T" was selling crack cocaine from the residence and that "T's" phone number was 732-0381.

**{¶ 26}** Upon searching Montgomery County tax records, Detective Halburnt discovered that Boone was the owner of the subject residence. Detective Halburnt testified that he also searched the Dayton Police Management Information System as it pertained to the subject residence and discovered that, on November 19, 2013, police officers had been dispatched to that address on a drug complaint. The officer's

comments from the field interview card indicate that Boone was present at the residence on that date, and a small amount of marijuana was recovered from his person for which he received a minor misdemeanor citation. Boone also provided his phone number to the officers, which was 732-0381.

{¶ 27} Upon investigating Boone's criminal history, Detective Halburnt discovered that, in September 2009, Boone had been trespassed from a known drug house. Significantly, in a 2006 Greene County case, Boone pled guilty to trafficking in cocaine. Detective Halburnt obtained a photograph of Boone from the system and showed it to the CI. The CI identified the man in the photograph as "T," who was selling cocaine from the subject residence.

{¶ 28} Finally, the affidavit contained information regarding three controlled drug buys from the subject residence arranged by Detective Halburnt on February 17, 2016, March 2, 2016, and March 22, 2016. Prior to each buy, the CI contacted Boone on his cell phone at 732-0381 and was directed to come to the subject residence. With respect to the first two buys on February 17, 2016 and March 2, 2016, the CI reported that he purchased drugs from an unknown black male, whom he described as light-skinned, approximately six feet tall and weighing 260 pounds, with brown hair and brown eyes. The last controlled buy of March 22, 2016, involved a drug purchase directly from Boone. Significantly, Detective Halburnt submitted the search warrant affidavit to the judge only two days after the last controlled buy which specifically involved Boone selling crack cocaine to the CI.

{¶ 29} Based on all of the information contained in Detective Halburnt's affidavit, we cannot say the municipal court judge erred in finding a fair probability that contraband

or evidence of a crime would be discovered in Boone's residence. In reaching this conclusion, we recognize that close or marginal cases should be resolved in favor of upholding a magistrate's probable cause determination. *George*, 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph two of the syllabus. Here, there is no evidence that police misled the judge, that the judge wholly abandoned his judicial role, or that the affidavit was so lacking in indicia of probable cause as to make belief in its existence unreasonable.

**{¶ 30}** Boone's first assignment of error is overruled.

**{¶ 31}** Boone's second and final assignment of error is as follows:

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR WHEN IT FOUND THE DEFENDANT'S STATEMENTS TO THE POLICE VOLUNTARY AND ADMISSIBLE UNDER THE FACTS PRESENTED HEREIN ON THIS RECORD.

**{¶ 32}** In his final assignment, Boone contends that the trial court erred when it found that the statements made by Boone to Deputy Hemingway during the interview after execution of the search warrant were made voluntarily. Rather, Boone argues that he only made admissions because Detective Hemingway improperly induced him to do so by promising to advocate to the trial court and the prosecutor to "cut [Boone] a break" during sentencing. Boone asserts that the only reason he made any admissions to Deputy Hemingway was because he thought he would receive community control.

**{¶ 33}** "Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself. In order to ensure that this right is protected, statements resulting from custodial interrogations are admissible only after a

showing that the procedural safeguards described in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been followed." *State v. Western*, 2015-Ohio-627, 29 N.E.3d 245, ¶ 12 (2d Dist.). "[T]he State has the burden to show by a preponderance of the evidence that a defendant's confession was voluntarily given." *Id.* at ¶ 16.

{¶ 34} "Whether a statement was made voluntarily and whether an individual knowingly, voluntarily, and intelligently waived his or her *Miranda* rights are distinct issues." *State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311, ¶ 30. Generally, statements made to police after a knowing, intelligent, and voluntary waiver of an individual's *Miranda* rights are presumed voluntary. *Id.* at ¶ 31. However, "[t]he *Miranda* presumption applies to the conditions inherent in custodial interrogation that compel the suspect to confess. It does not extend to any actual coercion police might engage in, and the Due Process Clause continues to require an inquiry separate from custody considerations and compliance with *Miranda* regarding whether a suspect's will was overborne by the circumstances surrounding his confession." *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 14 (2d Dist.). Therefore, "[r]egardless of whether *Miranda* warnings were required and given, a defendant's statement may have been given involuntarily and thus be subject to exclusion." *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 11.

{¶ 35} When making a determination regarding whether a valid waiver has occurred, we must "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of

threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled on other grounds*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

**{¶ 36}** A court may find coercion when law enforcement officers "persuad[e] or deceiv[e] the accused, with false promises or information, into relinquishing rights and responding to questions." *Id.* at 39. However, "the presence of promises does not as a matter of law, render a confession involuntary." *Id.* at 41. Officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant. *Id.*; *see also State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 111.

**{¶ 37}** " 'The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. * * *' " (Citations omitted). *State v. Jackson*, 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 28.

**{¶ 38}** We determined in *Jackson* " 'that false promises made by police to a criminal suspect that he can obtain lenient treatment in exchange for waiving his Fifth Amendment privilege so undermines the suspect's capacity for self-determination that his election to waive the right and incriminate himself in criminal conduct is fatally impaired. His resulting waiver and statement are thus involuntary for Fifth Amendment purposes. * * * The simple result is that officers must avoid such promises, which are not proper tools of investigation.' " (Citations omitted). *Id.* at ¶ 40.

**{¶ 39}** Conversely, a police officer's assurances that a defendant's cooperation will

be considered, or that a confession will be helpful, do not invalidate an otherwise legal confession. *State v. Stringham*, 2d Dist. Miami No. 2002–CA–9, 2003-Ohio-1100, ¶ 16. "[A] mere suggestion that cooperation may result in more lenient treatment is neither misleading nor unduly coercive, as people 'convicted of criminal offenses generally are dealt with more leniently when they have cooperated with the authorities.' " *Id.*, quoting *State v. Farley*, 2d Dist. Miami No. 2002–CA–2, 2002-Ohio-6192, ¶ 44. (Other citation omitted.) "Likewise, an investigator's offer to 'help' if a defendant confesses is not improper." *Id.*, citing *State v. Chase*, 55 Ohio St.2d 237, 247, 378 N.E.2d 1064 (1978). (Other citation omitted.) Furthermore, "[a]dmonitions to tell the truth, coupled with a benefit that flows naturally from being truthful, are not coercive in nature." (Citation omitted.) *Porter* at ¶ 34. *Accord State v. Tullis*, 2d Dist. Greene No. 2012–CA–59, 2013-Ohio-3051, ¶ 22.

**{¶ 40}** Initially, we note that we have reviewed the audio recording of Deputy Hemingway's interview of Boone in the rear of the rapid deployment vehicle on March 25, 2016. Regarding Boone's *Miranda* warnings, the record clearly establishes that he was advised of his rights by Deputy Hemingway. Although Deputy Hemingway did not have a waiver of rights form for Boone to sign, the record supports the trial court's finding that *Miranda* warnings were given before questioning began. The interview was brief, lasting only approximately fifteen minutes. The tone of the interview was conversational and did not involve any threats or aggressive behavior by Deputy Hemingway. Furthermore, Boone is a middle-aged adult male and did not appear to be under the influence of any drugs or alcohol. Notably, Boone had prior experience with the criminal justice system. Upon being advised of his *Miranda* warnings, Boone stated that he understood his rights

and agreed to speak to Deputy Hemingway.

{¶ 41} Nevertheless, Boone argues that he was improperly induced to make admissions because Deputy Hemingway allegedly promised a recommendation for probation or community control in exchange for Boone's truthfulness. The record, however, undermines his argument in this regard. Deputy Hemingway stated that he would advocate to the trial court and the prosecutor to "cut [Boone] a break" if Boone was honest during the interview. While emphasizing that it was up to the prosecutors and the judge, the record establishes that at no point during the interview did Deputy Hemingway mention a specific recommendation to Boone regarding sentencing, nor did the deputy tell Boone that he would receive community control, probation, or a specific sentence for being honest. There is no evidence that a suggestion of a "break" overcame Boone's will.

{¶ 42} Police use of tactics like admonitions to tell the truth are not improper. *State v. Dixon*, 101 Ohio St.3d 328, 2004–Ohio–1585, 805 N.E.2d 1042, ¶ 29; *Stringham*, 2d Dist. Miami No. 2002–CA–9, 2003–Ohio–1100, at ¶ 16 (saying that "admonitions to tell the truth are considered neither threats nor promises and are permissible"). Here, Deputy Hemingway urged Boone to cooperate with law enforcement and tell the truth. Offering to advocate to the trial court and the prosecutor to "cut [Boone] a break" if Boone was honest during the interview does not amount to a specific recommendation that he receive probation or a definitive sentence.

{¶ 43} In light of the foregoing, we see nothing unduly coercive here in the detective's conduct or language. *Stringham* at ¶ 15 (finding defendant's arguments unpersuasive that police downplayed the seriousness of his offense, exaggerated the

evidence against him, implied that he would not be prosecuted, suggested that he could work something out if he would confess, stated that he could do more for himself than an attorney, and offered to help him in exchange for a confession). Nothing in these facts and circumstances suggests improper coercion leading to an involuntary confession. *Id.* at ¶ 13 (finding "nothing coercive or overbearing about the physical circumstances of the interview," where the officers spoke in a conversational manner, the tone of the dialogue was "benign," the defendant was questioned only once for about two hours, and there was no evidence of physical deprivation or mistreatment). Accordingly, we find that the trial court did not err when it found that Boone's statements were voluntary and that his *Miranda* rights were not violated.

{¶ 44} Boone's second assignment of error is overruled.

{¶ 45} Both of Boone's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Alice B. Peters
Daniel J. O'Brien
Hon. Timothy N. O'Connell