[Cite as *State v. Gitzinger*, 2018-Ohio-4445.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27893 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-1973 |
| | : | |
| CRAIG M. GITZINGER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of November, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 W. Second Street, Suite 1717, Liberty Tower, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-Appellant Craig Gitzinger appeals his conviction for two counts of Trafficking in Marijuana (Vicinity of a School or Juvenile) pursuant to R.C. 2925.03, felonies of the fourth degree. Gitzinger was convicted on his no contest pleas, and he filed a timely notice of appeal with this court on February 9, 2018.

{¶ 2} While the charges were pending in the trial court, Gitzinger filed a motion to suppress any and all statements obtained in contradiction of his rights under the Ohio and U.S. Constitutions. Specifically as relevant to this appeal, Gitzinger claims his statements were not voluntary and were the result of coercive police tactics. After a hearing, his motion to suppress was overruled.  Gitzinger's appeal is now properly before this court.

{¶ 3} The record establishes that on June 5, 2017, Brookville Police Detective Mike Swigart met with a confidential informant, who told him that he had purchased marijuana at Gitzinger's home in Brookville, Ohio. (Tr. 6-7.) Detective Swigart instructed the confidential informant to arrange a second purchase of marijuana from the same residence. (*Id.*) The informant arranged the purchase and returned to the home, wearing a microphone provided by the police. (*Id.*) The informant set up and completed a second purchase of marijuana for $90. (*Id.*) Detective Swigart then obtained a search warrant for Gitzinger's residence. (Tr. 7.)

{¶ 4} On June 22, 2017, after executing the search warrant, Detective Swigart took Gitzinger and his 16-year-old son into custody. Upon arrival at the police station, Gitzinger was placed in a holding cell, while his son was interviewed by Detective Swigart. The interview of Gitzinger's son took place in Detective Swigart's office. Upon completion of

the interview with the juvenile, Detective Swigart brought Gitzinger from the holding cell to his office. Gitzinger was presented with a *Miranda* waiver form by Detective Swigart. Detective Swigart read the form, and Gitzinger indicated he understood; Swigart then had Gitzinger initial next to each right and read aloud the final section of the waiver form. Gitzinger signed the form and agreed to speak to Detective Swigart.

{¶ 5} During the interview, which was recorded by audio and video through a security system in Detective Swigart's office, Gitzinger indicated that he did not want to go to jail. The recording system in Detective Swigart's office malfunctioned for three minutes, and a portion of the conversation was not recorded. Although Gitzinger later testified that, during this gap, Detective Swigart promised him he would only receive probation based on his criminal history, Detective Swigart testified that no such promise was made. After learning about the malfunction of the video system during a pretrial conference with the prosecutor, Detective Swigart contacted his supervisor, who attempted to fix the camera system. Several measures were taken to check and fix the system, however it continued to malfunction intermittently.

{¶ 6} On July 14, 2017, Gitzinger was indicted on two counts of trafficking in marijuana. Gitzinger filed a motion to suppress his statements, and a hearing was held on December 27, 2017. On January 4, 2018, the court rendered an oral decision denying Gitzinger's motion in its entirety. On January 9, 2018, Gitzinger entered no contest pleas to both counts and was found guilty. On February 6, 2018 Gitzinger was sentenced to community control on both counts.

{¶ 7} Gitzinger's first assignment of error is as follows:

APPELLANT'S STATEMENTS MADE DURING INTERROGATION WERE

INVOLUNTARY BASED ON COERCIVE POLICE TACTICS.

{¶ 8} In his first assignment of error, Gitzinger asserts that under the totality of the circumstances, it is clear that statements he made during interrogation by Detective Swigart were involuntary due to coercive police tactics and a promise of probation. The State responds by suggesting that no promise of probation was made by Detective Swigart, and Gitzinger's will was not overborne by any purported distress he incurred knowing his 16-year-old son was likewise subject to interrogation.

{¶ 9} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must "accept the trial court's factual findings as long as they are supported by competent, credible evidence." *State v. Belton,* 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100. "[T]he appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8.

{¶ 10} "A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *State v. Dailey,* 53 Ohio St.3d 88, 559 N.E.2d 459 (1990), paragraph two of the syllabus. Statements made after a voluntary waiver of rights are "presumed to be voluntary." *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 31.

{¶ 11} "Whether a statement was made voluntarily and whether an individual

knowingly, voluntarily, and intelligently waived his or her *Miranda* rights are distinct issues." *State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311, ¶ 30. Generally, statements made to police after a knowing, intelligent, and voluntary waiver of an individual's *Miranda* rights are presumed voluntary. *Id.* at ¶ 31. However, "[t]he *Miranda* presumption applies to the conditions inherent in custodial interrogation that compel the suspect to confess. It does not extend to any actual coercion police might engage in, and the Due Process Clause continues to require an inquiry separate from custody considerations and compliance with *Miranda* regarding whether a suspect's will was overborne by the circumstances surrounding his confession." *State v. Porter,* 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 14 (2d Dist.). Therefore, "[r]egardless of whether *Miranda* warnings were required and given, a defendant's statement may have been given involuntarily and thus be subject to exclusion." *State v. Kelly,* 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 11.

{¶ 12} When making a determination regarding whether a valid waiver has occurred, we must "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards,* 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled on other grounds,* 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

{¶ 13} A court may find coercion when law enforcement officers "persuad[e] or deceiv[e] the accused, with false promises or information, into relinquishing rights and responding to questions." *Id.* at 39. However, "the presence of promises does not as a

matter of law, render a confession involuntary." *Id.* at 41. Officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant. *Id.; see also State v. Belton,* 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 111.

{¶ 14} " 'The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. * * *' " (Citations omitted). *State v. Jackson,* 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 28.

{¶ 15} We determined in *Jackson* " 'that false promises made by police to a criminal suspect that he can obtain lenient treatment in exchange for waiving his Fifth Amendment privilege so undermines the suspect's capacity for self-determination that his election to waive the right and incriminate himself in criminal conduct is fatally impaired. His resulting waiver and statement are thus involuntary for Fifth Amendment purposes. * * * The simple result is that officers must avoid such promises, which are not proper tools of investigation.' " (Citations omitted). *Id.* at ¶ 40.

{¶ 16} Conversely, a police officer's assurances that a defendant's cooperation will be considered, or that a confession will be helpful, do not invalidate an otherwise legal confession. *State v. Stringham,* 2d Dist. Miami No. 2002-CA-9, 2003-Ohio-1100, ¶ 16. "[A] mere suggestion that cooperation may result in more lenient treatment is neither misleading nor unduly coercive, as people 'convicted of criminal offenses generally are dealt with more leniently when they have cooperated with the authorities.' " *Id.,* quoting *State v. Farley,* 2d Dist. Miami No. 2002-CA-2, 2002-Ohio-6192, ¶ 44. (Other citation

omitted.) "Likewise, an investigator's offer to 'help' if a defendant confesses is not improper." *Id.,* citing *State v. Chase,* 55 Ohio St.2d 237, 247, 378 N.E.2d 1064 (1978). (Other citation omitted.) Furthermore, "[a]dmonitions to tell the truth, coupled with a benefit that flows naturally from being truthful, are not coercive in nature." (Citation omitted.) *Porter,* 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, at ¶ 34. *Accord State v. Tullis,* 2d Dist. Greene No. 2012-CA-59, 2013-Ohio-3051, ¶ 22.

{¶ 17} Initially we note we have reviewed the video recording and cannot say that the trial court's conclusions of fact are undermined by the video. Although a critical few minutes of the video are lost, the trial court rejected Gitzinger's testimony and chose to believe Detective Swigart's assertion that he did not promise probation or act in a coercive manner. (Tr. p. 37:16.) "The factual findings of the trial court are given great deference." *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996).

{¶ 18} The trial court, as finder of fact, found that Gitzinger knowingly, intelligently, and voluntarily waived his constitutional rights. The trial court also found that there were no threats, promises or coercive tactics engaged in by Detective Swigart during the interview process. With respect to the issue of Detective Swigart bringing up Gitzinger's prior criminal history, the trial court noted " '[w]hen the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity.' " (Tr. p. 71, citing *State v. Jackson,* 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 29.) Further, as noted by the trial court, the video establishes the conversation between Detective Swigart and Gitzinger was calm and conversational. Accordingly, this first assignment of error is overruled.

{¶ 19} Gitzinger's second assignment of error is as follows:

APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO CALL POLICE INFORMATION TECHNOLOGY EMPLOYEE AS A WITNESS AT SUPPRESSION HEARING.

Gitzinger asserts that his trial attorney was ineffective for not calling a police department information technology employee, Major Tom Simon, to testify regarding the malfunctioning video recording equipment. The State counters that even though Major Simon or another IT specialist may have been able to provide a more technical and specific explanation for the malfunctioning equipment, Gitzinger cannot establish what the additional testimony may have established and/or how it would have changed the outcome of the motion to suppress. As indicated above, notably, the trial court rejected Gitzinger's testimony regarding a "promise," finding instead that Detective Swigart was credible and made no such "promise."

{¶ 20} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, a defendant must show that his counsel's representation fell below an objective standard of reasonableness. *Strickland* at 688; *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. But there are "countless ways to provide effective assistance of counsel in any given case" and, for that reason, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689; *Bradley* at 142. "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable processional assistance * * *." *Id.* A court, therefore, "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's own perspective at the time. *State v. Cook,* 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992), citing *Strickland* at 687-689.

{¶ 21} Additionally, even assuming that counsel's performance were professionally unreasonable, an error by counsel does not warrant setting aside a criminal conviction if the error had no effect on the judgment. To warrant reversal, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley* at 142; *Strickland* at 694. In other words, a court making the prejudice inquiry must find that the defendant has met his burden of showing that it is reasonably likely that the jury's verdict would have been different absent counsel's alleged errors. *Bradley* at 143, citing *Strickland* at 695-696. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 111-112, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

{¶ 22} As noted by the State, Gitzinger "has presented no evidence that calling [such] witness [IT employees] would have made any difference." *State v. Jones,* 2d Dist. Miami No. 2016-CA-22, 2018-Ohio-673, ¶ 57. Furthermore, a decision not to call witnesses is generally a trial tactic which should not be questioned, absent a showing of

prejudice. This is especially true "in the absence of any showing that testimony of such a suggested witness would have assisted the defense." (Internal citation omitted.) *State v. Maxwell,* 2d Dist. Montgomery No. 13966, 1993 WL 39385 (October 7, 1993).

**{¶ 23}** We cannot find that counsel's performance was deficient, resulting in prejudice. Thus, Gitzinger's second assignment of error is overruled.

**{¶ 24}** Having found no merit to both assignments of error, Gitzinger's convictions are affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck
Michael P. Allen
Kristin L. Arnold
Hon. Erik R. Blaine