[Cite as *State v. Gray-Mosher*, 2018-Ohio-1422.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27605 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-3057 |
| | : | |
| LEE A. GRAY-MOSHER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 13th day of April, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Lee A. Gray-Mosher appeals from his conviction and sentence on one count of felonious assault, a second-degree felony.

{¶ 2} Gray-Mosher advances two assignments of error. First, he contends the trial court erred in overruling his motion to suppress evidence. He asserts that post-arrest statements he made to a detective were not voluntary. Second, he claims his seven-year prison sentence is contrary to law because the trial court failed to consider statutory sentencing guidelines.

{¶ 3} The record reflects that Gray-Mosher was indicted on two counts of felonious assault (deadly weapon and serious physical harm). The charges stemmed from his act of stabbing or slashing the victim's throat and arm with a knife in the dugout of a school baseball field. Following his arrest, Gray-Mosher was interviewed in jail. At the outset of the interview, a detective advised him of his *Miranda* rights and obtained a waiver. Gray-Mosher proceeded to make statements that he subsequently sought to suppress. The trial court overruled the suppression motion after a hearing. Gray-Mosher then pled no contest to one count of felonious assault (serious physical harm) in exchange for dismissal of the other count. The trial court accepted the plea and found him guilty. After holding a sentencing hearing and reviewing a presentence-investigation report, the trial court imposed a seven-year prison term. This appeal followed.

{¶ 4} In his first assignment of error, Gray-Mosher challenges the trial court's suppression ruling. He argues that his jailhouse statements to the detective after his arrest were not voluntary. It is unclear whether he is arguing that the waiver of his *Miranda* rights was not voluntary, making his subsequent statements also not voluntary, or

whether he is arguing that, notwithstanding a valid waiver of his *Miranda* rights, his ensuing statements were involuntary. *See State v. Nevarez-Reyes*, 2d Dist. Montgomery No. 27047, 2017-Ohio-2610, ¶ 31 ("Whether a statement was made voluntarily and whether an individual knowingly, voluntarily, and intelligently waived his or her *Miranda* rights are distinct issues."). Either way, we find his argument unpersuasive.

{¶ 5} Although Gray-Mosher cites case law discussing the test for determining whether a "custodial interrogation" occurred, thereby implicating *Miranda*, the interview at issue here undoubtedly was a custodial interrogation. Gray-Mosher was arrested shortly after the assault, which occurred at around10:45 p.m. on October 2, 2016. He was transported to jail, and he remained there when detective Robert Bluma interviewed him at 1:15 p.m. on October 3, 2016.

{¶ 6} Prior to questioning Gray-Mosher, Bluma reviewed a "rights form" with him. The detective explained Gray-Mosher's *Miranda* rights, assured that he understood them, and obtained a waiver. (Tr. at 18, 20). The detective testified that Gray-Mosher did not appear to be under the influence of alcohol or anything else during the interview. (*Id.* at 22). On cross examination, Bluma acknowledged that Gray-Mosher was wearing a straightjacket during the interview. (*Id.* at 23). Defense counsel questioned Bluma about Gray-Mosher being nineteen years old at the time of the incident and having no criminal record. (*Id.* at 24-25). Defense counsel also asked whether Bluma had any knowledge of Gray-Mosher screaming and hitting his head in the police cruiser when arrested. Bluma responded negatively. (*Id.* at 26-27). Defense counsel then asked whether Bluma had inquired about Gray-Mosher's mental health, medications, and "cutting" behavior prior to beginning questioning. Again, the detective responded negatively. (*Id.* at 28). Bluma

added that Gray-Mosher did not report taking anything other than allergy medication, that he was cooperative during the interview, and that he did not hesitate when answering questions. (*Id.* at 29-31). An audio recording of the interview reflects that Bluma did ask near the end of the questioning whether Gray-Mosher ever had seen a psychiatrist or been in counseling for mental-health issues. Gray-Mosher responded negatively. Based on its review of the audio recording, the trial court opined that Bluma was "particularly gentle" with Gray-Mosher. (*Id.* at 29). The trial court "detected no coercion, no threats" and noted that the detective "was asking questions in a conversational tone[.]" (*Id.*).

{¶ 7} Having reviewed the record, including the audio recording, we conclude that Gray-Mosher's waiver of his *Miranda* rights was valid. Even if we accept that he was intoxicated at the time of the assault and had emotional or mental problems, he appeared to be lucid at the time of the interview, which occurred roughly fifteen hours after the assault. Nothing in Bluma's testimony or our review of the audio recording suggests that Gray-Mosher lacked an understanding of his *Miranda* rights or the capacity to waive them. Nor does the record suggest that his *Miranda* waiver was anything other than a free and deliberate choice made without intimidation, coercion, or deception. *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (reciting the test for a valid *Miranda* waiver).

{¶ 8} Even where a valid *Miranda* waiver exists, however, a statement may be involuntary and subject to suppression if the statement is the product of actual police coercion. *Nevarez-Reyes* at ¶ 31-32. " 'In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and

frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' " *Id.* at ¶ 33, quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled on other grounds*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

{¶ 9} The record does not reflect that Gray-Mosher's will was overborne during the interview or that his statements were the product of any coercion. It is true that he was nineteen years old and had no prior criminal record. He also had a tenth-grade education. On the other hand, he appeared to be competent during the interview, speaking calmly and coherently. He exhibited no signs of intoxication or duress. He acknowledged taking only allergy medication and denied seeing a psychiatrist or receiving counseling for mental-health issues. The interview itself lasted about twenty-four minutes, and Bluma made no threats or promises to induce a confession. The detective's questioning was not aggressive, the tone was low-key and conversational, and Gray-Mosher was not mistreated or deprived of anything. In short, we see no basis for concluding that Gray-Mosher's statements to the detective were involuntary. Accordingly, the first assignment of error is overruled.

{¶ 10} In his second assignment of error, Gray-Mosher challenges his seven-year prison sentence. He contends the sentence is contrary to law because the trial court "failed to consider the sentencing guidelines." He argues the trial court failed to consider, or adequately consider, mitigating factors including his youth, lack of a criminal record, substance-abuse problems, mental health, and troubled family life. He also argues that, in his intoxicated state, he believed his knife attack on the victim was necessary to prevent the victim from sexually harassing or assaulting a female friend who was present. Finally,

he claims the trial court improperly considered three "unrelated issues" when imposing his sentence: (1) the fact that his knife attack came close to killing the victim, (2) his statement to his brother shortly after the attack that he should go back and kill the victim and the witnesses, and (3) the availability and timing of judicial release.

{¶ 11} When reviewing a felony sentence, "an appellate court may vacate or modify [the] sentence * * * only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1; *see also* R.C. 2953.08(G)(2). A sentence "is not contrary to law [if it falls] within the statutory range [and the trial court] expressly state[s] that it * * * considered the purposes and principles of sentencing [under] R.C. 2929.11 [and] 2929.12." *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 32 (2d Dist.).

{¶ 12} Here Gray-Mosher's seven-year sentence is within the statutory range for a second-degree felony, and the trial court expressly stated that it had considered the principles and purposes of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors under R.C. 2929.12. (Tr. at 60-61; Doc. # 72). Therefore, Gray-Mosher's sentence is not contrary to law. His real argument appears to be that the record clearly and convincingly fails to support a seven-year sentence.

{¶ 13} Although the trial court's sentence did not require any of the findings referenced in R.C. 2953.08(G)(2), the Ohio Supreme Court has reasoned:

> * * * [I]t is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court.

That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Marcum* at ¶ 23.

{¶ 14} We do not find by clear and convincing evidence that the record fails to support Gray-Mosher's sentence. The trial court expressly considered his "voluntary intoxication and underlying mental health issues" as contributing factors in his crime. (Tr. at 59). The trial court also had been made aware of his youth, family background, and lack of a criminal record. (Sentencing memorandum, Doc. #68: *see also* PSI report). The weight to be placed on these matters was within the trial court's discretion. With regard to Gray-Mosher's claim that he believed he was defending a female friend at the time of the attack, the trial court was free to accept or reject that assertion and to give it whatever weight it deemed appropriate. We note, however, that the PSI contains a statement suggesting that Gray-Mosher may have intended to kill the victim for other reasons. (*See* PSI report at 2). During his jailhouse interview, Gray-Mosher also claimed at one point that the victim may have said something that "irked" him.

{¶ 15} We also see nothing improper about the trial court considering the fact that the knife attack easily could have killed the victim. The trial court stated that "but for serendipity, and perhaps fractions of an inch, the victim would have died from the slashing of his throat by Mr. Gray-Mosher and we would now be—he would be standing before the Court facing a sentence of 15 years to life in prison for murder." (Tr. at 59-60). The trial court was entitled to take this fact into consideration. We reach the same conclusion with

regard to the trial court's consideration of statements Gray-Mosher made to his brother after the attack. On that issue, the trial court stated: "In short, the Court must balance here the gravity of Mr. Gray-Mosher's crime, including frankly, the very troubling remarks he made following the incident to the effect that he should perhaps return to the scene and finish the job and perhaps take care of the witnesses. That's the sort of thing that judges lay awake at night thinking about." (*Id.* at 60). Although Gray-Mosher claims he remained intoxicated when he made the comments, we see nothing objectionable about the trial court considering them.

{¶ 16} Finally, we are unpersuaded that the trial court's comments about judicial release rendered Gray-Mosher's sentence objectionable. By statute, the length of a defendant's sentence impacts judicial-release eligibility. *See* R.C. 2929.20(C). In this case, Gray-Mosher will be eligible after serving five years of his seven-year sentence. *See* R.C. 2929.20(C)(4) ("If the aggregated nonmandatory prison term or terms is more than five years but not more than ten years, the eligible offender may file the motion not earlier than the date on which the eligible offender has served five years of the offender's stated prison term[.]"). When addressing judicial release at sentencing, the trial court expressed displeasure with the General Assembly and stated: "The Defendant at some point will be eligible for judicial release and I'll talk to him about that momentarily, but that's determined, in some part and large part, by the length of his initial sentence and that's unfortunate." (Tr. at 60). Based on this remark, Gray-Mosher appears to argue that the trial court selected a relatively lengthy sentence with the purpose to preclude early eligibility for judicial release. We reject this argument for at least two reasons. First, it is not clear from the remark that what Gray-Mosher asserts is true. The trial court simply

expressed unhappiness with the fact that eligibility for judicial release is tied to the length of a defendant's sentence. Second, Gray-Mosher cites no authority precluding a trial court from taking judicial-release eligibility into consideration at sentencing. For all of the foregoing reasons, we overrule his second assignment of error.

{¶ 17} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .


WELBAUM, P.J. and DONOVAN, J., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Ben M. Swift
Hon. Steven K. Dankof