**[Cite as *State v. Pack*, 2020-Ohio-5210.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28459 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3467/1 |
| | : | |
| WARREN D. PACK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of November, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, 301 West Third Street, 5th Floor, Dayton, Ohio 45422

      Attorney for Plaintiff-Appellee

MARK A. FISHER, Atty. Reg. No. 0066939, 5613 Brandt Pike, Huber Heights, Ohio 45424

      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Warren D. Pack appeals from his conviction following a no-contest plea to one count of illegal use of supplemental-nutrition-assistance program benefits, a fifth-degree felony.

{¶ 2} Pack advances two assignments of error. First, he contends the trial court erred in overruling a motion to suppress post-arrest statements he made to a federal investigator. Second, he claims the trial court erred in imposing a statutory maximum 12-month prison sentence and in failing to award him proper jail-time credit.

{¶ 3} The record reflects that Pack was indicted on the above-referenced charge in November 2017. After the trial court overruled a suppression motion, he pled no contest. The trial court found him guilty and imposed a 12-month prison term with 104 days of jail-time credit. It ordered the sentence to run concurrently with Pack's sentence in two other Montgomery County cases and a Clark County case. This appeal followed.

{¶ 4} In his first assignment of error, Pack contends the trial court erred in overruling his suppression motion insofar as it sought to suppress statements he made to special agent Mark Barnhart of the U.S. Department of Agriculture at the police department. Pack argues that his statements were subject to suppression because agent Barnhart failed to advise him of his *Miranda* rights and obtain a waiver before questioning him.

{¶ 5} Suppression-hearing testimony established that Kettering police officer Jonathan McCoy conducted a traffic stop of a Jeep in which Pack was a front-seat passenger on May 13, 2017. The late-afternoon traffic stop was made after the vehicle

was observed failing to stop at a stop sign.[1] Upon approaching the vehicle, McCoy detected the odor of burnt marijuana inside the passenger compartment. When he inquired about the smell, Pack stated that there was a marijuana "roach" in the center console. Officer McCoy then obtained consent from the driver, who owned the Jeep, to search the vehicle. Attached to a purse that had been on the driver's lap, McCoy found a key ring with vials containing a crystal-meth-like substance and marijuana. He also located drugs and paraphernalia in a safe in the vehicle as well as contraband in the glove compartment.

{¶ 6} Pack and the driver were arrested for drug possession and placed in separate police cruisers. While at the scene, officer McCoy advised Pack of his *Miranda* rights. Pack indicated that he understood those rights and agreed to speak with McCoy. Shortly after Pack was *Mirandized* and while at the scene, detective Kevin McGuire also spoke to him about a food-stamp card that had been found in the back seat of the Jeep. That same day, special agent Barnhart interviewed Pack at the Kettering Police Department. Before the interview, Barnhart was informed that Pack already had been *Mirandized* at the scene of the traffic stop. The agent proceeded to ask whether Pack understood his *Miranda* rights but did not re-advise him of those rights. Pack responded that he did understand his rights, and he participated in the interview without invoking them. This interview, which concerned the food-stamp card, occurred before 6:00 p.m. on the day of the traffic stop.

{¶ 7} In his suppression motion, Pack argued, among other things, that agent

---

[1] On cross-examination, McCoy agreed with defense counsel that it might have been around 5:00 p.m. when the stop occurred. (Suppression Tr. at 31-32.)

Barnhart was required to re-administer *Miranda* warnings and obtain another waiver before conducting the interview at the police department. The trial court rejected this argument. It reasoned:

> As for Warren Pack, Off. McCoy testified that after the arrest, he read Warren Pack his *Miranda* rights. Warren Pack indicated that he understood his rights and agreed to speak with the officers.
>
> Later that day, Agt. Barnhart interviewed Warren Pack at the City of Kettering Police Department. Agt. Barnhart testified credibly that Warren Pack indicated that he understood his *Miranda* rights and did not invoke his rights. The Court does not agree with Warren Pack that Agt. Barnhart should have readminister[ed] the *Miranda* warnings. Off. McCoy testified that he initiated the traffic stop sometime late afternoon, and Agt. Barnhart testified that he interviewed Warren Pack before 6:00 p.m. The initial *Miranda* warning was not stale, as only a couple of hours had elapsed from the *Miranda* warning, and Warren Pack remained aware of his rights at the time of the interview. Warren Pack did not invoke his rights at any point. No evidence before the Court suggested that Warren Pack's emotional or intellectual state affected his waiver of rights.

(July 22, 2018 Decision, Order, and Entry at 15.)

{¶ 8} Pack's only suppression argument on appeal is that agent Barnhart was required to re-*Mirandize* him prior to the interview at the police department. In support, he appears to contend that Barnhart was required to re-*Mirandize* him and to obtain another waiver solely because the subject matter of the agent's interview differed from the subject

matter of the questioning by police at the scene of the stop. In particular, Pack suggests that the questioning at the scene largely involved drug possession whereas Barnhart's interview at the police department concerned Pack's possession of a food-stamp card. (Appellant's Brief at 5-6.)

{¶ 9} In deciding a motion to suppress, the trial court assumes the role of trier of fact and is best positioned to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Pence*, 2d Dist. Clark No. 2013-CA-109, 2014-Ohio-5072, ¶ 7. We must accept the trial court's factual findings if they are supported by competent, credible evidence. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8. Accepting those facts as true, we then must determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 10} Here the issue on appeal is a legal one, namely whether the *Miranda* warnings and waiver at the scene of the traffic stop remained in effect when agent Barnhart interviewed Pack. "Police are not required to re-administer *Miranda* warnings to a suspect when a relatively short period of time has elapsed since the initial warnings. Courts look to the totality of the circumstances when deciding whether initial warnings remain effective for subsequent interrogations." (Citations omitted.) *State v. Powell*, 132 Ohio St. 3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 119. In addition to the length of time between the giving of *Miranda* warnings and the subsequent interrogation, other relevant considerations include "whether the warnings and subsequent interrogation were given in different places, whether they were conducted by different officers, the extent to which the subsequent statement differed from previous statements, and the apparent

intellectual and emotional state of the defendant." *State v. Evans*, 2d Dist. Montgomery No. 27178, 2017-Ohio-8184, ¶ 18.

{¶ 11} With the foregoing considerations in mind, we conclude that agent Barnhart was not required to re-administer *Miranda* warnings prior to interviewing Pack. The purpose of examining the foregoing factors is to determine whether initial warnings became stale and remote so as to create a substantial possibility that the defendant was unaware of his rights. *State v. White*, 2018-Ohio-3076, 118 N.E.3d 410, ¶ 30 (2d Dist.). In this case, agent Barnhart explicitly asked whether Pack understood his *Miranda* rights, remained familiar with those rights, and wanted to talk, and Pack responded affirmatively. (Suppression Tr. at 73, 79, 82-83.) We note too only an hour or two elapsed between Pack being *Mirandized* and being interviewed by Barnhart. In *Evans*, we recognized that time lapses greater than 24 hours do not necessarily render prior *Miranda* warnings stale. *Evans* at ¶ 18. In addition, the record supports the trial court's factual finding that nothing about Pack's intellectual or emotional state suggested the prior *Miranda* warnings had become stale.

{¶ 12} With regard to the other considerations, we acknowledge that the initial warnings and the subsequent interrogation by agent Barnhart occurred at different locations. However, Pack remained in police custody from the time that he was *Mirandized* until he was interviewed by Barnhart. We also acknowledge that Barnhart was not the person who *Mirandized* Pack. Finally, we recognize that Pack's statements at the scene differed somewhat from his statements to Barnhart because the agent's inquiry was limited in scope. Although the suppression transcript does not reveal much about Pack's statements at the scene, what he told officer McCoy appears to have related

largely to the drugs and other contraband found in the car, whereas Barnhart questioned Pack only about a food-stamp card found in the pocket of a pair of shorts in the Jeep's back seat. Notably, however, detective McGuire testified that he did engage in post-*Miranda* questioning of Pack at the scene about the food-stamp card. (Suppression Tr. at 99-100.) In fact, the detective testified that he questioned Pack *exclusively* about the card, which Pack admitted was found in his shorts. (*Id.* at 100.) Therefore, the subject matter of detective McGuire's post-*Miranda* inquiry at the scene was identical to the subject matter of agent Barnhart's questioning at the police department. Under the totality of these circumstances, we agree with the trial court's determination that agent Barnhart was not required to re-*Mirandize* Pack and obtain another waiver. Accordingly, the first assignment of error is overruled.

{¶ 13} In his second assignment of error, Pack argues that his 12-month prison term in this case clearly and convincingly was unsupported by the record. He contends the trial court should have considered the absence of weapons involved in his offense, the lack of serious physical harm, the absence of economic loss, his remorse, and his good behavior in jail while awaiting sentencing. Pack also argues that the trial court should have awarded him 548 days of jail-time credit rather than 104 days.

{¶ 14} Upon review, we note that the trial court's judgment entry imposing Pack's sentence was filed on June 17, 2019. By its own terms, his concurrent 12-month prison sentence in this case expired months ago. Although the Ohio Department of Rehabilitation and Correction's web site reflects that Pack remains incarcerated, we note that he is still serving a 30-month sentence in one of the other Montgomery County cases.

{¶ 15} Because Pack has completed his 12-month sentence in this case, his

challenges to the length of that sentence and to the trial court's calculation of jail-time credit are moot. *State v. Eleyet*, 2018-Ohio-4879, 125 N.E.3d 380, ¶ 3 (2d Dist.); *State v. Robinson*, 2d Dist. Montgomery Nos. 26712, 26713, 2016-Ohio-3277, ¶ 4. Given that Pack's arguments under his second assignment of error are directed toward a prison sentence that he has completed, there is no meaningful remedy available. Accordingly, his second assignment of error is overruled as moot.

{¶ 16} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Mark A. Fisher
Hon. Gerald Parker