[Cite as *State v. Fowler*, 2024-Ohio-361.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

STATE OF OHIO

    Appellee

v.

MICHAEL O. FOWLER, JR.

    Appellant

:
:
:
:
:
:
:
:
:
:
:

C.A. No. 2022-CA-28

Trial Court Case No. 22CR113

(Criminal Appeal from Common Pleas
Court)

· · · · · · · · · · ·

O P I N I O N

Rendered on February 2, 2024

· · · · · · · · · · ·

CARLO C. MCGINNIS, Attorney for Appellant

PAUL M. WATKINS, Attorney for Appellee

· · · · · · · · · · · ·

WELBAUM, J.

{¶ 1} Defendant-appellant, Michael O. Fowler, Jr., appeals from his conviction in the Miami County Court of Common Pleas after a jury found him guilty of unlawful sexual conduct with a minor. In support of his appeal, Fowler claims that the trial court erred by failing to suppress incriminating statements that he had made to detectives during an interview. Fowler claims that his statements should have been suppressed because he

did not knowingly, intelligently, and voluntarily waive his *Miranda* rights and because his statements were rendered involuntary by impermissible, coercive police conduct. Fowler also claims that the trial court erred by admitting certain records from Google at trial. According to Fowler, the Google records were not properly authenticated and violated his constitutional right of confrontation. For the reasons outlined below, we find no merit to Fowler's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

**{¶ 2}** On April 1, 2022, a Miami County grand jury returned an indictment charging Fowler with one third-degree-felony count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A)/(B)(3), and a forfeiture specification for Fowler's vehicle. The charge and specification arose from allegations that Fowler had the victim, who was 13 years old, perform fellatio on him in his vehicle in exchange for providing the victim with a vape pen.

**{¶ 3}** Fowler pled not guilty to the indicted charge and specification and then filed a motion to suppress statements that he had made during an interview with investigating detectives. In support of his motion to suppress, Fowler claimed that he had not knowingly, intelligently, and voluntarily waived his *Miranda* rights. Fowler also claimed that his statements should have been suppressed because they were the product of impermissible, coercive police conduct.

**{¶ 4}** On July 7, 2022, the trial court held a hearing on Fowler's motion to suppress. During the hearing, the State presented testimony from one of the detectives who

interviewed Fowler, i.e., Detective Steve Hickey of the Miami County Sheriff's Office. The State also presented audio and video recordings of Det. Hickey's interactions with Fowler. The evidence presented at the suppression hearing established that on March 7, 2022, Det. Hickey and Det. Jason Moore traveled to the Adult Parole Authority ("APA") office in Dayton, Ohio, to meet with Fowler after his regular office visit with his parole officer. The detectives' discussion with Fowler at the APA office was audio recorded and admitted into evidence at the suppression hearing as State's Exhibit 1.

{¶ 5} State's Exhibit 1 established that the detectives introduced themselves to Fowler and advised that they had some questions for him regarding an investigation. Det. Hickey told Fowler that he and Det. Moore would like to talk to him at the Miami County Sheriff's Office in Troy and asked if he was willing to go there with them. When Fowler asked whether he had a choice in the matter, Det. Hickey answered no and said that, either way, they would be taking him to the sheriff's office. Hickey did, however, offer to have a discussion with Fowler at the APA office, but Fowler decided to wait and talk to the detectives at the sheriff's office since they were going to take him there anyway.

{¶ 6} Shortly thereafter, Det. Hickey read Fowler his *Miranda* rights. In doing so, Det. Hickey asked Fowler if he understood each of the rights that were read to him. In response, Fowler verbally affirmed his understanding of the rights. No waiver card or other written materials were provided to Fowler during the *Miranda* advisement.

{¶ 7} The detectives' discussion with Fowler at the APA office lasted for approximately 10 minutes. Thereafter, the detectives placed Fowler in handcuffs and transported him to the Miami County Sheriff's Office in Troy. The detectives did not ask

Fowler any questions about the investigation prior to arriving at the sheriff's office. Fowler's transportation to the sheriff's office took approximately 45 minutes. While at the sheriff's office, the detectives began to video record their interaction with Fowler. The video recording was continuous with the audio recording that was initiated at the APA office in Dayton. Accordingly, there was no break in the recording between the time Fowler was taken from Dayton to Troy. The video recording was admitted into evidence at the suppression hearing as State's Exhibit 2.

{¶ 8} State's Exhibit 2 established that, before interviewing Fowler, Det. Hickey told Fowler: "Just a reminder, you are still under *Miranda* rights. I read you your *Miranda* rights. You understand all that?" In response, Fowler shook his head affirmatively and said: "Right." Det. Hickey then began the interview. During the interview, Fowler did not deny that he had met with the victim and that he had provided the victim with a vape pen. Although Fowler initially denied that the victim had performed fellatio on him in exchange for the vape pen, after further questioning, and after the detectives stressed the importance of honesty and cooperation, Fowler eventually admitted that the victim had put her lips on his penis.

{¶ 9} After considering the testimony and evidence presented at the suppression hearing, the trial court overruled Fowler's motion to suppress. The matter thereafter proceeded to a jury trial. During trial, the State presented the testimony of multiple witnesses, including Detective Sergeant Todd Cooper of the Miami County Sheriff's Office.

{¶ 10} Det. Cooper's testimony established that he had applied for a geofence

warrant through Google in an effort to identify a suspect. Det. Cooper explained that Google is able to use the Global Positioning System ("GPS") to track any working cellular device that has the Google application downloaded onto it. In applying for the geofence warrant, Det. Cooper provided Google with the coordinates of a fifteen-meter radius around the victim's residential driveway. Det. Cooper requested Google to track any cellular devices that had entered that radius during a specific timeframe in which the victim had met with Fowler.

{¶ 11} In response to the geofence warrant, Google sent Det. Cooper a letter, a signed Certificate of Authenticity, and the requested information. *See* State's Trial Exhibit 3. The information provided by Google established that there had been one cellular device detected in the radius provided by Det. Cooper during the timeframe in question. After learning about this device, Det. Cooper sent a second request for Google to provide him with the account information associated with the device.

{¶ 12} In response to Det. Cooper's second request, Google once again sent a letter, a signed Certificate of Authenticity, and the requested information. *See* State's Trial Exhibit 4. The information provided by Google established that the account associated with the device in question belonged to Fowler. Specifically, Google provided Det. Cooper with Fowler's name, e-mail address, billing address, and telephone numbers.

{¶ 13} Based on this information, Fowler was identified as a suspect in the investigation. Using the Ohio Law Enforcement Gateway ("OLEG") system, Det. Cooper created a photospread lineup that included Fowler's photograph. After viewing the photospread lineup, the victim identified Fowler as the man who had given her a vape

pen in exchange for performing fellatio on him.

{¶ 14} After hearing Det. Cooper's testimony and the testimony of the other trial witnesses, including the victim, the jury found Fowler guilty as charged in the indictment. The trial court then sentenced Fowler to 60 months in prison, designated him a Tier II sex offender, and ordered his vehicle to be forfeited.

{¶ 15} Fowler now appeals from his conviction, raising two assignments of error for review.

## First Assignment of Error

{¶ 16} Under his first assignment of error, Fowler contends that the trial court erred by failing to suppress the statements he had made during his interview with Det. Hickey and Det. Moore. Fowler claims that his statements should have been suppressed because he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights prior to the interview. Fowler also claims that his statements should have been suppressed because they were the product of impermissible, coercive police conduct.

### *Standard of Review*

{¶ 17} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).

"Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

*Miranda Waiver*

{¶ 18} We will first address Fowler's claim that the trial court should have suppressed his statements to detectives because he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights.

{¶ 19} "In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court outlined procedural safeguards needed for securing the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution." *State v. Hudson*, 2d Dist. Montgomery No. 29333, 2022-Ohio-3253, ¶ 30. "*Miranda* requires police to give a suspect certain prescribed warnings before custodial interrogation commences and provides that if the warnings are not given, any statements elicited from the suspect through police interrogation in that circumstance must be suppressed." *State v. Petitjean*, 140 Ohio App.3d 517, 523, 748 N.E.2d 133 (2d Dist.2000). "[I]f, after *Miranda* warnings are given, the suspect indicates that he or she wishes to remain silent, or if the suspect states that he or she wants an attorney, the interrogation must cease." *Hudson* at ¶ 30, citing *Maryland v. Shatzer*, 559 U.S. 98, 104,

130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010).

{¶ 20} "[A] suspect may effectively waive the rights conveyed in the *Miranda* warnings only if the waiver is made voluntarily, knowingly and intelligently." *State v. Dailey*, 53 Ohio St.3d 88, 559 N.E.2d 459 (1990), citing *Miranda* at 444 and 475. "Thus, a court may recognize the validity of a waiver of *Miranda* rights only if it finds that (1) 'the relinquishment of the right[s] [was] voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]' and (2) the person had 'a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon [them].' " *State v. Marejka*, 2d Dist. Montgomery No. 27662, 2018-Ohio-2570, ¶ 14, quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "Courts examine the totality of the circumstances to determine whether a suspect has knowingly, intelligently, and voluntarily waived his or her *Miranda* rights." *State v. White*, 2018-Ohio-3076, 118 N.E.3d 410, ¶ 17 (2d Dist.), citing *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988).

{¶ 21} Fowler claims that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights because he was not sufficiently advised of those rights before he was interviewed at the Miami County Sheriff's Office. We note that there is no dispute that Fowler was, at all relevant times, subject to a custodial interrogation, and that Det. Hickey read Fowler his *Miranda* rights when Fowler was initially taken into custody at the APA office in Dayton. Although Fowler argues that Det. Hickey read his rights to him in a speedy manner that only lasted 23 seconds, Fowler does not claim that he lacked an understanding of the rights when they were read to him.

{¶ 22} Fowler instead claims that he was not properly advised of his *Miranda* rights because he was transported to a different location, i.e., the Miami County Sheriff's Office in Troy, and because he was interrogated approximately 45 minutes after he had been advised of his *Miranda* rights at the APA office in Dayton. Given the passage of time between Det. Hickey reading him his rights in Dayton and his transportation to the sheriff's office, Fowler argues that the initial reading of his rights was stale. Accordingly, Fowler claims that Det. Hickey should have reread him his *Miranda* rights before proceeding with the interview at the sheriff's office. We disagree.

{¶ 23} "Courts look to the totality of the circumstances when deciding whether initial warnings remain effective for subsequent interrogations." *State v. Powell*, 132 Ohio St. 3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 119, citing *State v. Roberts*, 32 Ohio St.3d 225, 232, 513 N.E.2d 720 (1987). When doing this, courts consider: (1) the length of time between the giving of the *Miranda* warnings and the commencement of the interrogation; (2) whether the warnings and interrogation were given at different places; (3) whether the warnings were given by the same officer who conducted the interrogation; (4) the extent to which a subsequent statement differed from any previous statements; and (5) the apparent intellectual and emotional state of the suspect. *Roberts* at 232; *Powell* at ¶ 119; *State v. Pack*, 2d Dist. Montgomery No. 28459, 2020-Ohio-5210, ¶ 10. "The purpose of [this] test is to 'determine whether the initial warnings have become so stale and remote that there is a substantial possibility that the individual was unaware of his constitutional rights at the time of the subsequent interrogation.' " *State v. Kottner*, 1st Dist. Hamilton No. C-120350, 2013-Ohio-2159, ¶ 24, quoting *State v. Grissom*, 1st

Dist. Hamilton No. C-100542, 2011-Ohio-1796, ¶ 13. *Accord White*, 2018-Ohio-3076, 118 N.E.3d 410, at ¶ 30.

{¶ 24} It is well established that "[p]olice are not required to readminister *Miranda* warnings to a suspect when a relatively short period of time has elapsed since the initial warnings." *Powell* at ¶ 119, citing *State v. Treesh*, 90 Ohio St.3d 460, 470, 739 N.E.2d 749 (2001). *Accord State v. Evans*, 2d Dist. Montgomery No. 27178, 2017-Ohio-8184, ¶ 18. The Supreme Court of Ohio has recognized that lapses of time greater than 24 hours do not necessarily make prior *Miranda* warnings stale. *See, e.g., Powell* at ¶ 121 (*Miranda* warnings given more than 30 hours prior to second interview were not stale where the defendant remained in continuous custody and was interviewed by the same officer at the same location); *State v. Brewer*, 48 Ohio St.3d 50, 59-60, 549 N.E.2d 491 (1990) (statement made one day after the defendant was advised of his *Miranda* rights by a different police department was not stale because it was made as "part of a series of discussions" during which the defendant had indicated his awareness of his rights); *State v. Barnes*, 25 Ohio St.3d 203, 208, 495 N.E.2d 922 (1986) (*Miranda* warnings given about 24 hours prior to the defendant's statement were not stale where the defendant was told that his rights still applied and where it was clear that the defendant was acting knowingly and voluntary during the conversation).

{¶ 25} In this case, the trial court found and the record established that there was a 45-minute delay between Fowler's *Miranda* advisement at the APA office in Dayton and his interview at the Miami County Sheriff's Office in Troy. This was a relatively short period of time that did not support Fowler's claim that the *Miranda* advisement was stale.

Although Fowler's interview was conducted at a different location from where the *Miranda* advisement was given, the trial court found and the record establishes that the interview was conducted by the same detective who had read Fowler his *Miranda* rights in Dayton. It is also clear from the trial court's findings and the record that Fowler's interview at the sheriff's office was simply a continuation of the discussion that Fowler had with Det. Hickey and Det. Moore in Dayton. Moreover, it is significant that the trial court found that Det. Hickey referred to the *Miranda* advisement given in Dayton before interviewing Fowler at the sheriff's office. Specifically, Det. Hickey told Fowler: "Just a reminder, you are still under *Miranda* rights. I read you your *Miranda* rights. You understand all that?" State's Suppression Hearing Exhibit 2. In response to those statements, Fowler shook his head affirmatively and said: "Right." *Id.*

{¶ 26} With respect to Fowler's intellectual and emotional state, the trial court found and the video evidence established that Fowler was alert, calm, focused, and cooperative throughout the interview. In addition, Fowler's responses to the detectives' questions were relevant and appropriate, thus indicating his understanding of the questions being asked of him.

{¶ 27} Based on the foregoing considerations, we do not find that there was a substantial possibility that Fowler was unaware of his constitutional rights at the time he was interviewed at the sheriff's office. In other words, we find that the initial *Miranda* advisement provided by Det. Hickey in Dayton was not stale and remained in effect at the time Fowler was interviewed. Accordingly, there was no need to readvise Fowler of his *Miranda* rights. Because of this, Fowler's claim that he did not knowingly, intelligently,

and voluntarily waive his *Miranda* rights on account of not being readvised of his rights at the sheriff's office lacks merit.

{¶ 28} Fowler also argues that he did not validly waive his *Miranda* rights because he did not receive the rights in writing, sign a written waiver, or make an express verbal statement indicating that he wanted to waive his rights. Fowler also claims that there is no valid waiver because Det. Hickey never expressly asked him whether he wished to waive his rights. Each of these arguments, however, has been rejected by the Supreme Court of Ohio.

{¶ 29} In *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, the defendant similarly argued that "he never validly waived his rights because (1) he was not given the *Miranda* warnings in written form * * *, (2) [the officer] did not expressly ask him whether he wished to waive his rights, and (3) he never signed a written waiver." *Id.* at ¶ 68. In rejecting each of these arguments, the Supreme Court explained that:

> A *Miranda* waiver need not be in writing to be valid. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Nor must the accused specifically state that he waives his rights. *Id.* at 375-376, 99 S.Ct. 1755; *Treesh v. Bagley*, 612 F.3d 424, 434 (6th Cir.2010). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010); *see also State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d

857, ¶ 100-101.

*Id.* at ¶ 68.

**{¶ 30}** In *State v. Scott*, 61 Ohio St.2d 155, 400 N.E.2d 375 (1980), the Supreme Court also explained that:

> An express written or oral statement of waiver of the right to remain silent or the right to counsel * * * is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in [*Miranda*].

(Citations omitted.) *Id.* at paragraph one of syllabus. *Accord State v. Dotson*, 2d Dist. Clark No. 1997-CA-71, 1997 WL 822694, *7 (Nov. 21, 1997).

**{¶ 31}** In this case, the trial court found and the record established that Fowler verbally confirmed his understanding of his *Miranda* rights immediately after they were read to him in Dayton and immediately before his interview at the Miami County Sheriff's Office. Following those confirmations, Fowler did not exercise his right to remain silent or request the presence of an attorney. Instead, Fowler willingly spoke with the detectives and answered their questions. Fowler's conduct in that regard constitutes an implied waiver of his *Miranda* rights, as no written materials or specific oral statements were required for a valid waiver.

**{¶ 32}** For all the foregoing reasons, Fowler's claim that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights lacks merit.

*Police Coercion*

**{¶ 33}** We next address Fowler's claim that the trial court should have suppressed his statements due to the detectives using impermissible, coercive police tactics during his interview. Specifically, Fowler claims that the detectives coerced him to make incriminating statements by offering him promises of leniency in exchange for his cooperation. Fowler also claims that the detectives threatened him with the prospect of an increased punishment if he did not speak to them and tell them the truth.

**{¶ 34}** Even where a valid *Miranda* waiver exists, as is did here, "a statement may be involuntary and subject to suppression if the statement is the product of actual police coercion." *State v. Gray-Mosher*, 2018-Ohio-1422, 101 N.E.3d 729, ¶ 8 (2d Dist.), citing *State v. Nevarez-Reyes*, 2d Dist. Montgomery No. 27047, 2017-Ohio-2610, ¶ 31-32. Indeed, "[c]oercive police activity is a necessary predicate to finding that a confession is not voluntary." *State v. McKinley*, 2d Dist. Montgomery No. 21668, 2007-Ohio-3705, ¶ 19, citing *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

**{¶ 35}** "The test [for coercion] is whether police conduct overbore the defendant's will to resist and brought about a confession not freely self-determined." *State v. Cottrell*, 2d Dist. Montgomery No. 28089, 2019-Ohio-889, ¶ 13, citing *State v. Young*, 2d Dist. Montgomery No. 20408, 2004-Ohio-3916, ¶ 44. "[A] court may find coercion when law-enforcement officers 'persuad[e] or deceiv[e] the accused, with false promises or information, into relinquishing his rights and responding to questions.' " *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 111, quoting *State v. Edwards*,

49 Ohio St.2d 31, 39, 358 N.E.2d 1051 (1976), *vacated on other grounds*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). *Accord State v. Gitzinger*, 2d Dist. Montgomery No. 27893, 2018-Ohio-4445, ¶ 13. Accordingly, "false promises of leniency and misrepresentations of potential punishments by the police are improper." *State v. Williams*, 2d Dist. Montgomery No. 28648, 2021-Ohio-1340, ¶ 63, citing *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 18 (2d Dist.).

{¶ 36} In contrast to false promises of leniency, "a mere suggestion that cooperation may result in more lenient treatment is neither misleading nor unduly coercive, as people 'convicted of criminal offenses generally are dealt with more leniently when they have cooperated with the authorities.' " *State v. Stringham*, 2d Dist. Miami No. 2002-CA-9, 2003-Ohio-1100, ¶ 16, quoting *State v. Farley*, 2d Dist. Miami No. 2002-CA-2, 2002-Ohio-6192, ¶ 44. (Other citation omitted.) "Likewise, an investigator's offer to 'help' if a defendant confesses is not improper." *Id.*, citing *State v. Chase*, 55 Ohio St.2d 237, 247, 378 N.E.2d 1064 (1978). (Other citation omitted.) "In addition, admonitions to tell the truth are considered neither threats nor promises and are permissible." *Id.*, citing *State v. Loza*, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994). Therefore, "[o]fficers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant." *Belton* at ¶ 111. *Accord State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 198.

{¶ 37} In this case, the trial court found that the detectives spoke calmly and respectfully to Fowler during the interview, which lasted one and a half hours. The trial

court also found that the detectives did not make any promises or threats to Fowler that were misleading or unduly coercive, and that the detectives did not mistreat or intimidate Fowler.  In addition, the trial court found that Fowler was calm and alert during the interview, and that he answered the detective's questions appropriately.

{¶ 38} Upon review, we find that the trial court's findings were supported by competent credible evidence in the record.   The evidence presented at the suppression hearing established that the detectives simply stressed to Fowler the importance of being honest and how Fowler's honesty and cooperation could benefit him.   For example, shortly after reading Fowler his *Miranda* rights, Det. Hickey made the following statement.

> People who cooperate, um, who are honest about things they've done, take responsibility for their own actions, those things bode well for them down the road, um, be that at the prosecutor's office or a judge or anything like that.   But that is completely up to you. We just want to give you as much information as we can so that you can make an educated decision on how you want to move forward with the stuff we need to talk about.

State's Suppression Hearing Exhibit 1.

{¶ 39} The evidence also established that the detectives advised Fowler that they could not make him any promises with regard to his punishment.   The detectives specifically advised Fowler that it was the judge who would implement the sentencing guidelines and decide his punishment.   The detectives further advised Fowler that the sentencing guidelines included considerations such as remorsefulness and honesty.

Accordingly, there is no merit to Fowler's claim that the detectives made promises of leniency or threats with regard to his punishment. The detectives simply told Fowler that his honesty and cooperation would be taken into consideration at sentencing, and that the detectives wanted to assist him in getting the help he needed. Such conduct was not improper.

{¶ 40} We do note that the detectives continually suggested that Fowler was lying to them after Fowler initially denied that the victim had performed fellatio on him. The detectives also implied a sense of urgency for Fowler to tell them the *whole* truth. However, "[p]olice assertions that the suspect had * * * been lying or would have no later chance to tell his side of the story do not automatically render a confession involuntary." *State v. Knight*, 2d Dist. Clark No. 2004-CA-35, 2008-Ohio-4926, ¶ 111. Upon review, we cannot say that the detectives' conduct overbore Fowler's will to resist or critically impaired his capacity for self-determination. The detectives simply told Fowler that they believed he was lying, that his dishonesty would be looked upon unfavorably by the prosecutor and the court, and that he could benefit from telling them the whole truth during the interview. We do not find that this constituted impermissible, coercive police conduct. Accordingly, Fowler's claim that his statements were involuntary lacks merit.

{¶ 41} Having found that Fowler knowingly, intelligently, and voluntarily waived his *Miranda* rights and that Fowler's statements were not rendered involuntary by impermissible, coercive police conduct, we conclude that the trial court properly denied Fowler's motion to suppress. Therefore, Fowler's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 42} Under his second assignment of error, Fowler challenges the admissibility of the Google records that were used to identify him.   Fowler contends that the Google records were inadmissible because they were not properly authenticated.   According to Fowler, the trial court erroneously determined that the Google records were self-authenticating documents.   Fowler also claims that the admission of the Google records violated his constitutional rights under the Sixth Amendment's Confrontation Clause.   Each of Fowler's arguments are addressed separately below.


*Authentication*

{¶ 43} As noted above, Fowler contends that the trial court erroneously determined that the Google records were self-authenticating documents and thus were not properly authenticated at trial.   "A trial court's ruling on the adequacy of authentication is reviewed for abuse of discretion."   (Citations omitted.)   *State v. Ramos*, 2d Dist. Montgomery No. 28214, 2019-Ohio-3588, ¶ 22.   "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary."   (Citation omitted.)   *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 44} Before a document can be admitted into evidence, it must be properly authenticated as set forth in Evid.R. 901 or self-authenticating under Evid.R. 902.   A document is properly authenticated under Evid.R. 901 "by evidence sufficient to support a finding that the matter in question is what its proponent claims."   Therefore, under Evid.R. 901, "extrinsic evidence of authentication or identification is a condition precedent

to the admissibility of substantive evidence." *Congress Park Business Ctr., L.L.C. v. Nitelites, Inc.*, 2d Dist. Montgomery No. 21262, 2007-Ohio-4200, ¶ 12. Evid.R. 902, on the other hand, lists certain kinds of documents that are self-authenticating, i.e., documents that can be admitted without extrinsic evidence of their authenticity.

{¶ 45} In this case, the trial court found that the Google records in question were self-authenticating under Evid.R. 902(11). Evid.R. 902(11) provides that "Certified Domestic Records of a Regularly Conducted Activity" are self-authenticating when they "meet[ ] the requirements of Evid.R. 803(6), as shown by a certification of the custodian or another qualified person[.]" The rule also requires that, before trial, the proponent of the self-authenticating document "must give the adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them." Evid.R. 902(11).

{¶ 46} Here, Fowler does not dispute that the State provided him with reasonable written notice of its intent to offer the Google records before trial or that the State made the records and the required certification available to him for inspection. Instead, Fowler argues that Evid.R. 902(11) was not satisfied because the Google records did not meet the requirements of Evid.R. 803(6).

{¶ 47} Evid.R. 803(6) provides that "Records of Regularly Conducted Activity" are not excluded by the rule against hearsay. Under Evid.R. 803(6), a record of regularly conducted activity is:

A memorandum, report, record, or data compilation, in any form, of

acts, events, or conditions, made at or near the time by, or from information

transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10)*, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *

(Emphasis added.) Evid.R. 803(6).

{¶ 48} Fowler contends that the Google records in question did not meet the requirements of Evid.R. 803(6) because the State did not present testimony from a records custodian or other qualified witness establishing that the Google records qualified as records of regularly conducted activity. This argument is flawed and illogical given that it is being lodged within the context of Evid.R. 902(11). "[T]he meaning [of Evid.R. 902] is clear: no evidence other than the document or item itself is needed for authentication (for purposes of admissibility) provided that the document or item meets the standards of a particular paragraph of the rule." 1980 Staff Note, Evid.R. 902. To require the testimony of a records custodian or other qualified witness to establish a document is self-authenticating under Evid.R. 902(11) would negate the whole purpose of that rule and render it meaningless.

{¶ 49} The language of Evid.R. 803(6) indicates that the required features of a record of regularly conducted activity can be shown not only "by the testimony of the custodian or other qualified witness" but also *"as provided by Rule 901(B)(10)."*

(Emphasis added.) Evid.R. 901(B)(10) states that evidence may be authenticated by "[a]ny method of authentication or identification provided by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio *or by other rules prescribed by the Supreme Court*." (Emphasis added.) Pursuant to Article IV, Section 5(B) of the Ohio Constitution, the Supreme Court of Ohio prescribes the rules governing the practice and procedure in all courts of the state, which includes the Ohio Rules of Evidence. Accordingly, the self-authentication provisions in Evid.R. 902 are prescribed by the Supreme Court. Because those provisions are prescribed by the Supreme Court, they apply to Evid.R. 803(6)'s catchall provision "as provided by Rule 901(B)(10)." *See State v. Sherman*, 6th Dist. Sandusky No. S-88-6, 1989 WL 47238, *8 (May 5, 1989) (applying Evid.R. 902 to the catchall provision in Evid.R. 803(6)).

{¶ 50} In addition, a staff note to Evid.R. 803(6) states that: "The record keeper, *absent self-authenticating provisions* must testify that the records are such as are routinely kept as a part of the business and that the entrant (declarant) is under a duty to record the items contained in the record, and that the records are maintained accurately in accordance with a custom or routine." (Emphasis added.) 1980 Staff Note, Evid. R. 803(6). This staff note suggests that when "self-authenticating provisions" are at play, no testimony from a records custodian is necessary to meet the requirements of Evid.R. 803(6). *See also Chagrin Falls v. Ptak*, 8th Dist. Cuyahoga No. 109342, 2020-Ohio-5623, ¶ 21 (holding that it was unnecessary to elicit testimony from a records custodian to satisfy Evid.R. 803(6) where a signed certificate of authenticity made pursuant to Evid.R. 902(11) was admitted into evidence).

**{¶ 51}** Based on the foregoing analysis, we reject Fowler's claim that testimony from a records custodian or other qualified witness is necessary to meet the requirements of Evid.R. 803(6) when that rule is being applied in the context of self-authentication under Evid.R. 902(11). However, the other requirements of Evid.R. 803(6) must be satisfied. Those requirements are that the document must: (1) "be one regularly recorded in a regularly conducted activity"; (2) "have been entered by a person with knowledge of the act, event or condition"; and (3) "have been recorded at or near the time of the transaction." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171. In addition, there must be no indication that " 'the source of information or the method or circumstances of preparation [of the document] * * * lack trustworthiness.' " *Id.*, quoting Evid.R. 803(6). As previously discussed, for a document to be self-authenticating under Evid.R. 902(11), all of the aforementioned requirements must be "shown by a certification of the custodian or another qualified person." Evid.R. 902(11).

**{¶ 52}** In this case, the State presented two documents titled "Certificate of Authenticity" that pertained to the Google records at issue. Both certificates were signed by Google records custodian Christopher Jackson on February 28, 2022, and March 2, 2022. In those documents, Jackson made the following certifications:

1. I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2. I am qualified to authenticate the records because I am familiar with how

the records were created, managed, stored and retrieved.

3. Google provides Internet-based services.

4. Attached is a true and correct copy of records pertaining to the geographical coordinates 39.944667, -84.225925, with Google Ref. No. 11489207 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the Search Warrant.

5. The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6. The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

State's Trial Exhibits 3 and 4.

{¶ 53} Upon review, we find that the foregoing certifications meet all the relevant requirements of Evid.R. 803(6). We also find that there is nothing in the record indicating a lack of trustworthiness with regard to the information provided in the Google records.

Although Fowler's appellate brief cites various reasons why he questions the trustworthiness/scientific reliability of the Google records, we note that there was nothing preventing Fowler from subpoenaing the records custodian's appearance at trial himself and questioning the records custodian regarding his concerns.

{¶ 54} For the foregoing reasons, we do not find that the trial court abused its discretion when it admitted the Google records as self-authenticating documents under Evid.R. 902(11).

*Confrontation Clause*

{¶ 55} Fowler also claims that the admission of the Google records in question violated his constitutional rights under the Sixth Amendment's Confrontation Clause. We review evidentiary rulings that implicate the Confrontation Clause de novo. *State v. Curtiss*, 2d Dist. Montgomery No. 29006, 2022-Ohio-146, ¶ 101, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97, citing *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir.2010). "In de novo review, we independently review a trial court's decision and accord no deference to it." (Citations omitted.) *Id.*

{¶ 56} "The Confrontation Clause provides: 'In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' " *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 210. "This means that 'admission of an out-of-court statement of a witness who does not appear at trial is prohibited * * * if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.' " *Id.*, quoting

*State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 34, citing *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶ 57} A statement is testimonial if it is "made for 'a primary purpose of creating an out-of-court substitute for trial testimony.' " *Maxwell* at ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). In other words, "[t]o rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.' " *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610, (2011), fn. 6, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "If a statement's primary purpose is anything else, the statement is nontestimonial," meaning "[i]ts admissibility is 'the concern of state and federal rules of evidence, not the Confrontation Clause.' " *Maxwell* at ¶ 40, quoting *Bryant* at 359.

{¶ 58} It is well established that business records "by their nature" are "not testimonial." *Crawford* at 56. Business records " 'are not testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are "by their nature" not prepared for litigation.' " *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 82, quoting *People v. Durio*, 7 Misc.3d 729, 734, 794 N.Y.S.2d 863 (2005), quoting *Crawford*. Therefore, "[b]usiness * * * records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S.Ct. 2527, 174 L.Ed.2d 314

(2009). *See United States v. Flores*, 6th Cir. No. 13-5763, 2014 WL 12930965, *2 (Sep. 29, 2014) (admission of T-Mobile cell phone GPS location data kept in the ordinary course of the company's business did not violate right of confrontation because the data "was not created for trial purposes" and thus "non-testimonial").

{¶ 59} In this case, the data provided in the Google records was not kept by Google for the purpose of proving some fact at trial. Rather, as certified by Google's records custodian in the two Certificates of Authenticity: "Google servers record[ed the] data automatically at the time, or reasonably soon after, it [was] entered or transmitted by the user, and this data [was] kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google." State's Trial Exhibits 3 and 4. Because the data provided in the Google records was created as part of a regularly conducted business activity, and not for purposes of trial, the records are non-testimonial. Because the records are non-testimonial, they do not offend the Confrontation Clause. Accordingly, Fowler's Confrontation Clause argument lacks merit.

{¶ 60} Because the trial court properly determined that the Google records were self-authenticating under Evid.R. 902(11), and because the admission of the Google records did not violate Fowler's right of confrontation, Fowler's second assignment of error is overruled.

## Conclusion

{¶ 61} Having overruled both assignments of error raised by Fowler, the judgment

of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and HUFFMAN, J., concur.